[Civil No. 1526.   Filed April 18, 1917.]

[164 Pac. 443.]

## J. M. LALLY, Appellant, v. J. G. CASH, Appellee.

1. WITNESSES—PRIVILEGED COMMUNICATIONS—EXTENT OF PRIVILEGE—CODEFENDANTS.—Even if evidence brought out on cross-examination of a defendant under Civil Code of 1913, paragraph 1680, as to examination of adverse party was concerning communications privileged as to him, such privilege could not extend to a codefendant, and such testimony would be permitted to stand as against such codefendant.

2. WITNESSES—EXAMINATION OF ADVERSE PARTY—STATUTE.—Civil Code of 1913, paragraph 1680, providing for cross-examination of an adverse party, is a modification of the common-law rules of evidence.

3. WITNESSES—EXAMINATION OF ADVERSE PARTY.—An adverse interest is the test of the right to cross-examine a party to a suit under Civil Code of 1913, paragraph 1680, as to cross-examination of adverse party.

4. PARTIES—WHO MAY BE JOINED—TORT ACTION.—One claiming damages in tort may join all or any number of the tort-feasors in the action as defendants.

5. DISMISSAL AND NONSUIT—VOLUNTARY AS TO ONE OR MORE CODEFENDANTS—TORT ACTIONS.—Actions of tort being in their nature joint and several, plaintiff therein may, at any stage, enter a *nolle prosequi*, dismiss, or discontinue as to part of the defendants without discharging the rest.

6. LIBEL AND SLANDER—EVIDENCE—SUFFICIENCY.—Evidence *held* not to show defendant's participation in either the composition or publication of an alleged libelous article.

7. EVIDENCE—EXAMINATION OF ADVERSE PARTY—EVASIVE ANSWERS.— Where plaintiff endeavored to make out his case from cross-examination of a defendant under Civil Code of 1913, paragraph 1680, such defendant's conduct upon the witness-stand and his studied evasion in answering questions, however objectionable, and although it might well have aroused the suspicion of the jury that he was not openly and frankly telling the truth, could not be substituted for positive evidence of the facts sought to be proved.

8. SIGNATURES—BY HAND OF ANOTHER.—The fact that one's name is attached to a paper does not make it his act and deed, unless he put it there himself, or caused or permitted it to be put there by another.

9. EVIDENCE — DOCUMENTARY EVIDENCE — PRODUCTION — PRELIMINARY EVIDENCE—PROOF OF EXECUTION OF ORIGINAL.—That plaintiff had made written demand from defendants to produce the original of an alleged libelous article in court at the trial, as provided in Civil Code of 1913, paragraph 1760, did not relieve him from the obligation of proving that there was an original.

10. EVIDENCE—DOCUMENTARY EVIDENCE—PRODUCTION—COMPELLING PRODUCTION—EFFECT OF FAILURE TO PRODUCE.—In a libel suit, it not having been shown that defendant composed the alleged libelous article or signed or published it, or that he ever was seen in possession of it, no favorable inferences should be indulged from the failure on his part to produce upon notice.

11. LIBEL AND SLANDER—PUBLICATION OF LIBEL.—Damages to character being the basis of civil liability for libel, plaintiff must show that the alleged libelous article has been seen and read by some other person than himself; Penal Code of 1913, section 225, providing that in criminal libel it is enough that accused knowingly parted with the immediate custody of the libel under circumstances which might expose it to be seen or read by any other person than himself, not applying to civil liability.

[As to liability for procuring publication of libel in newspaper, see note in Ann. Cas. 1913D, 13.]

APPEAL from a judgment of the Superior Court of the County of Graham. A. G. McAlister, Judge. Reversed and remanded.

Mr. I. L. Quiat and Mr. W. R. Chambers, for Appellant.

Mr. E. V. Horton and Messrs. Stratton & Lynch, for Appellee.

ROSS, J.—The appellee, who was the plaintiff below, instituted an action for damages against the appellant, Lally,

and David E. Bronson, charging them with willfully and maliciously composing and publishing a certain libel of and concerning plaintiff by parting therewith and permitting the same to be seen and read by C. A. Jackson and various other persons. A *verbatim* copy of the alleged libelous article is set forth in the complaint. That it is unprivileged and libelous *per se* is unquestioned. The defendants answered the complaint by general denial. The trial was before a jury. Plaintiff examined defendant Bronson upon the trial as if under cross-examination under the provisions of paragraph 1680 of the Civil Code of 1913. During the course of the cross-examination of Bronson, concerning conversations or interviews that he had had with the county attorney and deputy county attorney of Greenlee county about the alleged libelous article, the defendants interposed objections to the relation of said conversations or interviews upon the ground that they were privileged communications. This objection was sustained by the trial court, whereupon the plaintiff entered a nonsuit as to defendant Bronson. The trial proceeded as against defendant Lally and Bronson's testimony was permitted to stand and, against the objection of defendant Lally, was considered by the jury. Plaintiff had a verdict and judgment for $2,500.

We think the objection to the privileged character of the communication between the county attorney and Bronson was obviated by the dismissal of the action as against Bronson, for, even should it be granted that it was privileged as between Bronson and the county attorney, it could by no means extend to appellant, Lally.

The statute (paragraph 1680, Civil Code) provides for the cross-examination of an adverse party. This is a modification of the common-law rules of evidence. An interested adverse party is always an unwilling and antagonistic witness. The effective way of eliciting facts bearing upon the question involved is by leading questions. That Bronson was an interested and adverse party is evidenced by his answer, as also by his testimony elicited upon his cross-examination. The test of the right to cross-examine a party to a suit under the statute is an adverse interest. *Suter* v. *Page*, 64 Minn. 444, 67 N. W. 67; *Moore* v. *May*, 117 Wis. 192, 94 N. W. 45. The danger of this rule being abused, as suggested by appel-

lant, by making antagonistic witnesses nominal parties for the sole purpose of cross-examination, is more apparent than real. If such case should arise, the trial court can and will take care of it. In this case it is clear that the appellee acted in entire good faith in making Bronson a defendant and also in his cross-examination.

One claiming damages in tort may join all or any number of the tort-feasors in the action as defendants. It was not essential, of course, that he make Bronson a defendant, nor, having made him a defendant, was it indispensable that he retain him as one. In 14 Cyc. 411, it is said:

"Actions of tort being in their nature joint and several, plaintiff in such an action may, at any stage of the cause, enter a *nolle prosequi*, dismiss, or discontinue as to a part of the defendants without discharging the rest."

It is contended by appellant that the court committed error in refusing to instruct the jury to return a verdict in his favor, for the reason that there is no competent evidence in the record that in any way connects the appellant with the composition or publication of the alleged libelous article. A close and analytical review of the evidence impresses us with the truth of the appellant's contention. Giving the evidence all the consideration to which it is entitled, we think it falls short of showing that the appellant participated either in its composition or publication. The appellee, either from choice or necessity, chose to make out his case with the testimony of defendant Bronson, Deputy County Attorney Dave Ling, and C. A. Jackson, the last of whom he alleges in his complaint saw and read the libelous article. Bronson's testimony in regard to the alleged libelous article, when carefully read, does not positively, either directly or indirectly, connect appellant therewith, either as publisher or composer. His conduct upon the witness-stand and his studied evasion in answering questions might well have aroused the suspicion of the jury that he was not openly and frankly telling the truth, but this action upon his part, however objectionable, cannot be substituted for positive evidence of the facts sought to be proved. His testimony is as follows:

"By Mr. Horton: Q. You are one of the parties defendant, are you not? A. I am.

"Q. You know Mr. J. M. Lally? A. I do.

"Q. Do you know Mr. J. G. Cash, the plaintiff? Did you know these parties on or about March 26, 1914? A. I did.

"Q. On or about that date did the defendant Mr. Lally bring an article to you and ask you to publish it, concerning the plaintiff, Mr. Cash? A. I do not remember.

"Q. Did he at any time about that time bring an article to you concerning Mr. Cash and ask you to publish it? A. I do not remember.

"Q. You do not remember? A. No, sir.

"Q. You do not remember anything about it, do you, Mr. Bronson? A. I believe not.

"Q. Mr. Bronson, do you remember on or about the 26th day of March, 1914, of Mr. Lally bringing you an article that is set out in this complaint, and he, in your office or print-shop, in Clifton, signed this article, purporting to be the author of it, in the presence of C. A. Jackson, G. A. Sterling, and Miss Maud Gutch? A. Mr. Lally has brought me articles at different times. I cannot remember the particular ones or particular times.

"Q. Did he bring you an article on or about this time? A. He brings them every week, so he must have.

"Q. Did Mr. Lally, on or about the 26th day of March, 1914, bring you an article and ask you to publish it, concerning Mr. Cash? A. About what date?

"Q. On or about the 26th day of March, 1914, or during the week of that date? A. I do not remember.

"Q. Can you state that he did not bring you one? A. No, sir.

"Q. I will ask, Mr. Bronson, you know Mr. Dave Ling, do you not? A. I do.

"Q. I will ask you if you stated to him on Monday, on or about the 29th day of March, 1914, that Mr. Lally had brought you an article the week prior, concerning Mr. Cash and asked you to publish it? A. I don't think I ever had any such communication with Mr. Ling.

"Q. I will ask you if you didn't make that sort of statement to me some time during the week of March 26, 1914. A. I did discuss the subject with you.

"Q. Now, I will ask you this question, Mr. Bronson, and I will try to frame it so it will not be privileged: Did you, during the week of March 27, 1914—did Mr. Lally come to

you with an article concerning Mr. Cash and ask you to publish it, the article that you spoke to me about? A. Mr. Lally brought me articles every week. He very likely brought me one that week.

"Q. Now, Mr. Bronson, I will ask you to read that, and I will ask you if that isn't a copy of the article which you spoke to me about and which you testified that Mr. Lally brought you and asked you to publish? A. I could not say if that is the same article.

"Q. You cannot say that it is not the same article? A. No, I cannot.

"Q. Then you don't remember? A. I do not remember. I cannot remember the language.

"Q. The article which you spoke to me about and which Mr. Lally brought to you for publication, was it not similar to this? A. I could not say. I receive articles every week that I never use, and I don't pay any attention to them and don't keep them in mind.

"Q. Have you the original of this article in your possession? A. I have not.

"Q. Did you ever have it in your possession? A. I can say as I did before, I do not know whether that is the same article or not, or whether that is a correct copy or not.

"Q. Have you read this, Mr. Bronson? A. I looked at it.

"Q. I want you to read that. A. Is this the same article read in the complaint this morning?

"Q. Yes. A. Well, I heard that, and know what the substance of that is.

"Q. Do you remember ever having that article in your possession? A. No, sir; I cannot say I do.

"Q. Then you will not say that you have not had the original of this article in your possession? A. I do not think I have."

Bronson fails to state that appellant gave him the alleged libelous article. From his testimony it is reasonably certain that appellant was a regular weekly contributor to the paper being published by Bronson. When asked about the particular article in question, he does not admit or state that it was given to him by appellant. He refuses to identify the article in question as one given to him by appellant. He says: "I do not remember. I cannot remember the language." There

is positive evidence that he had the article in his possession, although he denies it. The fact that appellant brought him articles every week and probably one about the twenty-sixth day of March is a circumstance which, when taken in connection with the appellant's signature being attached to this particular article, would tend to arouse suspicions that he gave Bronson the article in question. But, as we will hereafter show, there is no proof that it was the appellant's signature or that he was the author of the article. If there were any direct positive evidence, even though slight or of little weight, that appellant gave the article to Bronson, the verdict of the jury based thereon should not be disturbed. In this case there is no positive or direct evidence and but one circumstance—that is, appellant had given other copy to Bronson—upon which to base a conclusion that appellant gave this particular article to him.

Witness Jackson, when shown a typewritten copy of the article, testified that he had never seen it before; "that he had never read an article of similar import or anything like it"; that while his name appeared on the copy of the article as a witness, he did not remember appellant's signature. Witness Ling testified that he went to Bronson's printing establishment in Clifton and made a copy of the original article, the copy that was exhibited to the witnesses Bronson and Jackson. Looking at this evidence in its most favorable light, it fails to prove or tend to prove, except in the most nebulous way, that appellant permitted "the same to be seen and read by C. A. Jackson and various other persons," or that he composed the same.

Ling testified that the original was in Bronson's possession, and that he copied it. The copy made by him and introduced in evidence purported to have been composed by appellant; his name was attached to it. The appellant objected to the introduction of this copy because no "proper foundation for the introduction of secondary evidence had been laid," and its introduction over the objection is assigned as error. The only witness who testified that he saw the original was Ling. He did not testify that it was signed in the appellant's signature. The fact that appellant's name was attached to the paper did not make it his act and deed unless he put it there himself or caused or permitted it to be put there by another.

Its genuineness or authenticity was not proved. That appellee had made written demand from appellant and Bronson to produce the article in court at the trial, as provided in paragraph 1760 of the Civil Code, did not relieve the appellee from the obligation of proving that there was an original.

"Before a party can be permitted to introduce secondary evidence of the contents of a written contract, deed, or other instrument stated to have been lost or destroyed, satisfactory proof must first be made of the former existence, proper execution, and genuineness of the instrument. The same requirements must be complied with before introducing secondary evidence of the contents of an instrument that is beyond the jurisdiction of the court." 17 Cyc. 536.

It not having been shown by any evidence that the appellant composed the article or signed it or published it, or that he ever was seen in the possession of it, no unfavorable inferences should be indulged from the failure on his part to produce upon notice. The last known custodian of the original article as shown by the evidence was Bronson.

The giving of notice to the appellant to produce the original without any evidence whatever that it was in his possession is not a sufficient excuse for the introduction of the copy in evidence. Wigmore on Evidence, paragraph 1203, states the rule as follows:

"The rule requiring notice to the opponent proceeds on the assumption that the opponent has possession of the document, the object being to show a demand and refusal to produce. Hence the mere giving of notice or demand, without showing that the opponent had the document demanded, is of no avail."

Appellant assigns the giving of the following instruction as error:

"To sustain the charge of publishing a libel it is not necessary that the words and things complained of should have been read or seen by another. It is enough that the accused knowingly parted with the immediate custody of the libel under such circumstances which exposed it to be read or seen by any person other than himself."

This instruction is taken almost word for word from section 225 of the Penal Code. When applied to criminal libel, it is a correct exposition of the law. Damage to character,

by reason of libel, is the basis of civil actions. If the libel is not seen by anyone except the writer, even though he may have parted with it, it is inconceivable how damage to character would result. Because the party against whom a libel is directed may personally seek to punish the libeler and thereby commit a breach of the peace, the policy of the criminal law has declared:

"It is enough that the accused knowingly parted with the immediate custody of the libel under circumstances which might expose it to be read or seen by any other person than himself."

When, however, damage for defamation of character is sought, it is incumbent upon the plaintiff to show that the libelous article has been seen and read by some other person than himself. In *Yousling* v. *Dare,* 122 Iowa, 539, 98 N. W. 371, speaking through Justice McCLAIN, the court said:

"On this question there seems to be no conflict in authorities. The cases, so far as our attention has been called to them, uniformly hold that, in a civil action for libel, the sending of a communication containing defamatory language directly to the person defamed, without any proof that, through the agency or in pursuance of the intention of the sender, it has come to the knowledge of any one else, does not show such publication as to render the sender liable in damages. *Wilcox* v. *Moon,* 64 Vt. 450, 33 Am. St. Rep. 936, 15 L. R. A. 760, 24 Atl. 244; *Spaits* v. *Poundstone,* 87 Ind. 522, 44 Am. Rep. 773; *Fonville* v. *McNease,* Dud. (S. C.) 303, 31 Am. Dec. 556; Odgers, Libel and Slander, 150."

In the same case, speaking of the inapplicability of the rule of publication in criminal cases as fixed by statute, to civil actions for defamation of character, the court said:

"But we have never held a publication which is sufficient to charge one with criminal liability to be necessarily sufficient to show damage as a basis for civil liability. The difference between the criminal law and the law of torts in this respect is manifest. The act of publishing a libel may be criminal, for the reason that it provokes the person libeled to wrath, and tends to create a breach of the peace. 1 Bishop, New Crim. Law, par. 591 (4); 2 McClain, Crim. Law, par. 1055. But in a civil action it is essential that some damage to the person libeled shall appear, either directly or by legal

inference, and no such inference can be drawn from the communication of the libelous matter to the very person concerning whom the language was used.''

The court committed error in giving the instruction complained of.

The judgment is reversed and cause remanded for a new trial.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J.—I concur in the order reversing the judgment and directing a new trial for the sole reason that the evidence in its entirety wholly fails to connect the appellant with preparation and publication of the libel. Consequently the lower court erred in refusing to direct a verdict for the appellant on the grounds of failure of proof.

I express no opinion with regards to the other questions urged.