[Civil No. 2472. Filed May 23, 1927.]

[256 Pac. 507.]

ARNETT PAWLEY, WANNETA MACK PAWLEY and KATIE M. STUTHMAN, Appellants, v. FIRST NATIONAL BANK OF YUMA, a Corporation, Appellee.

Mr. Glenn Copple and Mr. Earl Anderson, for Appellants.

Messrs. Robertson & Campbell, for Appellee.

JONES, Superior Judge.—In this action the First National Bank of Yuma, Arizona, appellee, was plaintiff below and Arnett Pawley, his wife, Wanneta Mack Pawley, his wife's mother, Katie M. Stuthman, his father, W. B. Pawley, and A. D. Putnam, were defendants. A. Pawley and Putnam were copartners in the Arizona Products Company, and the suit was upon two notes, dated June 23, 1920, for $183,140.49 and $7,654.42, less certain credits allowed, due, respectively, July 15, 1920, and on demand, purporting to have been signed by the Products Company by, as to the larger note, A. Pawley, and, as to the other, by Putnam. Plaintiff attacked as fraudulent the transfer of certain notes and a conveyance of real estate in Yuma county from A. Pawley and wife to Mrs. Stuthman, and also sought relief against certain property held in the name of W. B. Pawley. Judgment was for $85,115.77 against A. Pawley and

Putnam and for the relief prayed against Mrs. Stuthman and W. B. Pawley. This appeal is by A. Pawuey, Wanneta Mack Pawley and Mrs. Stuthman.

Defendants Putnam and A. Pawley pleaded want of consideration, that plaintiff had converted 898 bales of cotton it held as security, had been negligent in the disposition of such cotton, that credits had not been allowed, and counterclaimed for certain losses on a hedging arrangement hereafter discussed. They set up that the notes in suit should have totaled approximately $101,000; that the larger note was in blank when signed. They asked that an accounting of the various credits be had, claiming that it would be found that the plaintiff was indebted to A. Pawley and Putnam for about $75,000.

The case was tried on fifty-five interrogatories, and the court adopted by numbers many of the jury's answers but rejected some, and found generally for the plaintiff; no request for special findings having been made.

There are twenty-eight assignments of error, which were grouped in the argument and will be so considered by us.

The contention that the court could not disregard the jury's answers so far as A. Pawley's rights are concerned because of their legal nature is not well taken, since it appears that counsel for both parties and the court treated the case in its entirety as equitable.

The jury were charged that they might disregard the testimony of any witness whom they found to have testified falsely except to the extent of credible corroboration, and this is assigned as error for omitting the element of wilfulness. Appellee counters with the proposition that erroneous instructions are inconsequential where the jury serve as advisers only. Without accepting or rejecting that

view, we think in a case of this kind the error, if any, not sufficiently prejudicial to justify a reversal.

Another instruction declared that fraud is difficult of proof, usually devised in secrecy, and called the jury's attention to a number of details in evidence as throwing light on the matter. In part at least the instruction is a comment on the facts. However, the only appellant who could have been harmed by the instruction was Mrs. Stuthman, and she was not injured because the jury found that she was entirely innocent of fraud.

By two interrogatories the jury were asked if the notes had been "executed" by Pawley and Putnam for the Arizona Products Company. It is said these called for conclusions of law. Since it was claimed that a blank had been filled for an excessive sum after one of the notes had been signed, it would probably have been better to make the interrogatories more specific. But we are not prepared to reverse a judgment in an equity case for small imperfections in the form of interrogatories.

Appellants point out that the jury answered the interrogatory, "Did the plaintiff, First National Bank, on or about June 23, 1920, convert said 898 bales of cotton to its own use?" in the affirmative, and that the court rejected the answer as calling for a conclusion. The statute says that each interrogatory shall be confined to a "single question of fact" (chapter 125, Laws 1921), which could hardly be said of the interrogatory in question.

All these matters are largely within the discretion of the trial court, to whom the answers are advisory only. Whatever be the reason for not adopting the jury's answer, it involves a finding by the court, and that is the ultimate thing. It ought to take a strong showing to reverse the court's findings because of some defect or insufficiency in those of

the jury, or because of the trial court's disregard thereof. No such showing is here made.

The same may be said of interrogatories proposed by the parties. They ought to be submitted if the evidence is in substantial conflict and the matter is not otherwise covered. We have examined those of appellants which the court refused to submit, and we think he was justified in such refusal, either because there was no evidence to support answers favorable to appellants, or because they were covered by interrogatories that were submitted.

By way of cross-complaint, A. Pawley and Putnam pleaded that some time prior to the execution of the notes in suit the plaintiff and the Arizona Products Company owned 3,400 bales of cotton; that the bank and the company represented by Pawley entered into an oral arrangement whereby it was agreed that the cotton should be "hedged" on the market, the expenses thereof to be divided equally between the bank and the company upon a final settlement of their affairs; that such operations were to be conducted by Pawley, who would advance the necessary funds; that he or his company did advance $90,000 in such hedging operations, no part of which has been paid by the bank.

To support these allegations, defendants offered to show that the bank had owned or held as security more than 3,000 bales, including 898 owned by the Products Company and pledged to the bank to secure the company's indebtedness thereto; that Pawley, by oral arrangement with one Lane, vice-president and chief executive officer of the bank, went to Los Angeles. Appellants say in their brief that the purpose was:

"That said Pawley should buy and sell on the exchange as much cotton as appellee, Pawley, and the Products Company actually had on hand, to protect appellee, Pawley, and the Products Company against

decrease in price of the cotton actually owned or held by them at said time. That it was agreed that Pawley would put up the money to hedge said cotton; and that appellee would repay to appellant Pawley one-half of all the money paid out by Pawley on said hedge account. That appellant Pawley did go to Los Angeles and hedged said cotton and paid out $90,200 therefor at the time, and in the several sums mentioned in appellants' counterclaim. That appellant Pawley drew drafts on appellee for money paid out on said hedge account, and that said drafts were honored by appellee and charged against appellant Pawley's bank account with appellee."

Appellee's objection that such an arrangement was *ultra vires* the bank, or anyhow outside the authority of the vice-president, was sustained.

Assuming for the argument that a national bank may legitimately hedge commodities it holds as owner or pledgee, we think it clear that no officials short of the board of directors have authority to enter into such an arrangement as this one. Pawley's authority was to buy and sell in his own name and on his own judgment. No limitation was placed upon the amount he might advance. Though he was interested in less than one-third of the cotton, he was to be responsible for one-half of the expense.

Putting aside the strong suspicion that this was a speculation which resulted in losses of $90,000, and assuming it was hedging, we think no citation of authority is necessary to support our view that such broad powers as Pawley claims could not be conferred on a stranger to a national bank by an oral arrangement with its vice-president and "general manager."

Plaintiff offered a copy of a letter from it to A. Pawley, whose objection that proper foundation had not been laid was overruled; his point being that notice to produce should have been given, citing paragraph 1760 of the Civil Code. Pawley had pre-

viously testified that he never received or had the original. No notice was necessary. *Lally* v. *Cash,* 18 Ariz. 574, 164 Pac. 443.

It is assigned that the court erred in refusing requested instructions which stated in different language that an insolvent may sell his property for a valuable consideration in the absence of actual fraud. No doubt the instructions as abstract statements of the law were correct, but this was a trial as of an equity case, in which the jury were asked to answer certain interrogatories. If the interrogatories are read and explained, supplemented by such statements of the law as are necessary for their intelligent consideration, followed by the usual general instructions as to credibility of witnesses and the like, there is no need for anything further. It certainly is not necessary to tell the jury the effect of their answers.

To meet the defense of negligence in disposing of the cotton, the plaintiff offered a considerable bundle of correspondence passing between it and Parker & Company, New Orleans cotton brokers, with whom the cotton was placed. Defendants interposed the general objection of "irrelevancy, immateriality, and incompetency and self-serving," the overruling of which is assigned as error. Here, they say that copies of letters should not have been accepted without a showing of the reason for nonproduction of the originals, but they made no such objection below, and will not now be heard.

Nor is the contention well taken that the correspondence should have been excluded because some expressions therein were aidful to the plaintiff. Often what one says or writes is as material as what he does and impervious to the charge of being hearsay or self-serving. These are sometimes called verbal acts. To negative the charges of negligence, the plaintiff had the right to show the orders and

directions it gave Parker & Company relative to the disposition of the cotton, and the replies received were admissible so that the conduct of the plaintiff might be intelligently gauged.

If a statement, oral or written, bears the earmarks of "made" evidence, it might be properly excluded. Excepting such instances, the existence of expressions favorable to the writer on other issues would not justify the rejection of such "verbal acts." A cautionary charge should be given, and counsel should be alert to require it. None was here asked or given. There was no error.

The issue of negligence was submitted, and the jury and court both found upon conflicting evidence that the bank was not negligent. The question is not open here.

This cotton was by both parties placed in the hands of Parker & Company for sale, the proceeds to be applied on the indebtedness of the Products Company to the bank, surplus to the company. By letter, signed by the company and the bank, to Parker & Company, the Products Company had the right to direct the sale until July 15, 1920; thereafter the bank. Before July 15, 1920, Parker & Company advanced to the bank $90,000 on the security of the cotton. The Products Company did not offer to pay the bank's notes before July 15, 1920, or at all. The cotton was not sold until after July 15, 1920, and then at the bank's direction. It brought some $3,000 less than the ninety thousand dollar advance, which the bank repaid. The bank credited the Products Company with the full price the cotton brought. Was the bank's arrangement with Parker & Company for the ninety thousand dollar advance a conversion of the cotton?

The right of the Products Company to immediate possession of the cotton upon payment of its debt to the bank was in no manner disturbed by the ar-

rangement between Parker & Company and the bank. This is not the case of a pledgee putting the pledge out of his control so that the pledgor's right to immediate possession upon payment of the debt is not absolute—a wrong that all the courts recognize, differing, however, as to whether it amounts to conversion or not. Here, by the action of both parties, the cotton was placed with Parker & Company, and the right of the Products Company to the return of the security upon payment of the debt was in no way affected.

It was not a wrong that damnified the Products Company in any way. The bank was interested in the cotton to the extent of the sum due it by the Products Company, and we are unable to perceive how the advance made, necessarily in part payment of the debt for which the cotton was held as security, injured the Products Company.

Appellant Stuthman contends that the conveyance to her was impervious to attack. It appears that in 1916 A. Pawley purchased certain land in Yuma county either with his own or with his father's money, and later conveyed the same to his wife. This deed was not recorded until July, 1919. In August, 1919, A. Pawley and wife either pledged or granted a lien on all their personal property and mortgaged the land above mentioned specifically to secure any indebtedness they or either of them owed or might thereafter owe to the bank. Later the Pawleys had an opportunity to sell this land to one Owen, and the bank released this mortgage on the records. The sale was conditional, $6,000 in cash being paid the Pawleys by Owen and the balance represented by four notes each for $4,500, payable to A. Pawley, to secure which a chattel mortgage on other property was granted. These Owen notes were placed in the bank with the pledge it held to secure A. Pawley's debts. Thereafter the bank re-

leased three of these notes to two men by the names of Ira Lacy and Robert Pirtle for the purpose, conceded by all, of securing a loan from those two gentlemen to Pawley. Thereafter Lacy and Pirtle assigned their interest in the notes to W. B. Pawley, who had advanced his son, A. Pawley, $3,500. This sum was applied on A. Pawley's debt to Lacy and Pirtle. Some months later Mrs. Stuthman gave A. Pawley a check for $5,000, which he used in paying his debt to his father, $3,000, and testified that the balance went ultimately to Lacy and Pirtle. Pawley had possession of the three notes, claiming he held them as agent for his father and Lacy and Pirtle. He delivered them to Mrs. Stuthman upon receipt of her $5,000, and then he and his wife executed a deed of the land to Mrs. Stuthman. Pawley was then insolvent, and Mrs. Stuthman knew it.

All the appellants in this court say that the land was the separate property of Mrs. Pawley by virtue of the deed from her husband and consequently not liable for his debts after the release of the mortgage and the three notes. Mrs. Pawley could not, therefore, defraud the bank to whom she owed nothing, since the separate property of the wife is not liable for the community debts.

A. Pawley testified that neither he nor his wife had any interest in the notes or the land when the transfer to Mrs. Stuthman was made, and that he was acting solely as agent for Lacy and Pirtle and W. B. Pawley. Mrs. Pawley did not take the stand. The conveyance of the land signed by A. Pawley and wife is explained as merely incidental to the notes. Mrs. Stuthman was rather vague in her testimony as to whether she bought the property or merely loaned $5,000 to A. Pawley and wife. The findings were against Mrs. Stuthman, so we conclude that the court's view was that she merely stepped

into the shoes of Lacy and Pirtle and W. B. Pawley, becoming her son-in-law's creditor to the extent of $5,000, for which she took the notes and land as security.

All that Lacy and Pirtle could claim against the bank is that their debt be paid, and that is all that Mrs. Stuthman may claim. Since Mrs. Pawley makes no claim to the notes or land, either below or in this court, it is not necessary to consider what interest, if any, she has therein. We hold, therefore, that Mrs. Stuthman did not acquire this property from Mrs. A. Pawley.

The jury found Mrs. Stuthman innocent of fraud and that she had acted in good faith, although knowing of A. Pawley's insolvency. The court disregarded all the findings favorable to Mrs. Stuthman, and we must presume that she acted in bad faith in accepting the notes and deed, since there is a general finding for the plaintiff on all issues not covered by the accepted answers of the jury. But that did not make an outlaw of her, nor relieve the plaintiff of the obligation to do equity. The bank released the notes that Pawley might raise money on them, and he did receive $5,000 from Mrs. Stuthman on the strength of them. But for the release by the bank of its mortgage and its rights as pledgee to hold the three notes to Mrs. Stuthman there is nothing to show that Mrs. Stuthman would have advanced the $5,000 to her son-in-law, nor would it be reasonable to conclude that she would have done so. She took the notes and a deed to the land for her $5,000, and, if the bank is entitled to subject it to the payment of their claims against A. Pawley, in equity and good conscience it should pay Mrs. Stuthman the $5,000 which the bank in effect invited by its actions.

The fact that Mrs. Stuthman was guilty of actual fraud, as we have said, does not alter the situation. The United States Supreme Court, in a case from

the Arizona Territorial Supreme Court, was confronted with a similar problem, and met it by declaring:

"It is true that the defendant acted fraudulently and knew what he was about. But a man, by committing a fraud, does not become an outlaw and *caput lupinum. National Bank & L. Co.* v. *Petrie,* 189 U. S. 423, 425, 47 L. Ed. 879, 880, 23 Sup. Ct. Rep. 512 (see, also, Rose's U. S. Notes). He may have no standing to rescind his transaction, but, when it is rescinded by one who has the right to do so, the courts will endeavor to do substantial justice, so far as is consistent with adherence to law." *Stoffela* v. *Nugent,* 217 U. S. 499, 54 L. Ed. 856, 30 Sup. Ct. Rep. 600.

The bank does sufficient equity by repaying Mrs. Stuthman the $5,000 she advanced to Pawley, without interest.

Judgment is accordingly modified so as to recognize Mrs. Stuthman's lien to the extent of $5,000, with interest at six per cent per annum from date of the modification of this judgment in the court below. Otherwise the judgment is affirmed. Mrs. Stuthman is allowed her costs, which are fixed at one-third of the abstract and briefs. Appellee's supplemental abstract was to a large extent entirely unnecessary, consisting as it did merely of a reprint of the reporter's transcript. Appellee is allowed for one-half of its supplemental abstract.

ROSS, C. J., and McALISTER, J., concur.

LOCKWOOD, J., deeming himself disqualified, the Honorable GERALD JONES, Judge of the Superior Court of Pima county, was called to sit in his stead.