[Civil Nos. 3203, 3202. Filed June 20, 1933.]

[22 Pac. (2d) 1085.]

UNITED VERDE COPPER COMPANY, a Corporation, Appellant, v. NICK KOVACOVICH and MONDELINO KOVACOVICH, His Wife, Appellees.

UNITED VERDE EXTENSION MINING COMPANY, a Corporation, Appellant, v. NICK KOVACOVICH and MONDELINO KOVACOVICH, His Wife, Appellees.

Messrs. Chalmers, Fennemore & Nairn and Mr. Leo T. Stack, for Appellant United Verde Copper Company.

Messrs. Cornick & Crable, for Appellant United Verde Extension Mining Company.

Messrs. O'Sullivan & Morgan and Mr. Louis H. Bunte, for Appellees.

McALISTER, J.—Nick Kovacovich and Mondelino Kovacovich, his wife, instituted an action against the United Verde Copper Company in which they sought to recover damages for injuries to crops alleged to have been caused by poisonous gas and smoke discharged by the smelter of the defendant, and from a judgment in their favor the latter has appealed.

The plaintiffs are the owners of sixty acres of land situated on the Verde River about ten miles southeast of the defendant's smelter and during 1928 and 1929 and for many years prior thereto had grown thereon various crops. They allege that in 1928, at the proper time, they planted on this land the follow-

ing crops: wheat, 15 acres; pole beans, 6 rows of 50 plants each; tomatoes, 5 rows of 75 plants each; sweet potatoes, 145 rows of 96 plants each; corn, 450 rows averaging 137 stalks each; and alfalfa, 13 acres, and that these various crops were properly cultivated and would have matured and produced normal yields had they not been injured as hereinafter mentioned.

The complaint avers that during the year 1928, particularly the growing season thereof, the defendant in the operation of its smelter at Clarkdale, Yavapai county, Arizona, discharged daily into the air immense quantities of obnoxious, foul and poisonous gas, smoke and fumes containing great quantities of sulphur and other poisonous ingredients and that these were carried by the wind currents over and upon the above-described premises of plaintiffs and there damaged and destroyed the stalks, stems, leaves and foliage of the plants growing thereon and had the effect of stopping their growth and rendering them unproductive. It is alleged that the damage to the crops on account of these injuries was as follows: wheat $675.75, beans $318.75, tomatoes $239.07, potatoes $1,917.91, alfalfa $553.77, and corn $611.26, a total of $4,316.51.

The same allegations appear relative to the crops planted on the same land in the year 1929, the only difference being the extent of the acreage and the damage resulting from the injuries. The crops alleged to have been planted that year were these: alfalfa 20 acres, corn 292 rows averaging 158 stalks each, tomatoes 500 plants, cabbage 3,060 plants, watermelons and cantaloupes 200 hills each, patch of garden, wheat 23 acres, sweet potatoes 25,950 plants, and the damage to each on account of the injuries produced by the gas and smoke was averred to be this: alfalfa $867, corn $507.37, tomatoes $301.75, cabbage $314.50, melons $255, patch of garden $63.75, wheat $586.50, potatoes $3,442.50, a total of $6,338.37.

It is alleged further that in the year 1929, and for several years prior thereto, plaintiffs had an orchard on a portion of the above-described land consisting of 132 apple trees, 34 pear trees, 2 quince trees and 2 fig trees, and that these were properly cultivated, pruned and irrigated, but that during 1929, particularly the growing season thereof, the poisonous gas and smoke from defendant's smelter so injured the fruit growing thereon that plaintiffs were damaged as follows: apples $1,178.10, pears $231.20, quince $42.50, fig $17.00, a total of $1,468.80.

The prayer was that they have judgment for the aggregate sum of these damages, $12,123.68.

To this complaint the defendant interposed a general demurrer and a general denial. The demurrer was overruled and the case went to trial on the issue raised by the general denial.

At the same time plaintiffs filed against the United Verde Extension Mining Company a complaint in which the allegations, except the location of the smelter at Clemenceau instead of Clarkdale and the word "seven" instead of "ten" as describing the distance of the smelter from the land in question, were identical as was the relief prayed for. The answer was also practically the same. Both cases were set to be heard on the same day and on the eve of the hearing the defendants in both asked that they be consolidated for trial and, this motion being granted, they were tried as one. At the close of the trial which consumed ten days, the case was necessarily submitted to the jury in a way that required it to return separate verdicts. Both of these were in favor of plaintiffs; the one against the United Verde Copper Company was in the sum of $3,000 and that against the United Verde Extension Mining Company in the sum of $2,000. Judgments for the plaintiffs in these respective amounts were entered thereon and the de-

fendants have brought the case to this court for review.

Appellants have made eight assignments of error but argued them under seven propositions of law. It appears that after the jury had been sworn the court on application of appellees ordered that it be held together in the custody of the sheriff throughout the trial and the first assignment is that the court had no power to make such an order in a civil action. Under the strict rule of the common law the jury in both civil and criminal cases was not allowed, after it was sworn, to separate prior to the rendition of its verdict, but the rigors of this rule have been gradually disappearing and it has become the fairly general practice in recent years to permit them to separate during recesses in civil cases. 16 R. C. L. 307. There is not, however, any law requiring this to be done; in fact, under the statutes of this state the regular procedure is to hold them together, but the court in the exercise of its discretion may permit them to separate, and its power to do so is not dependent upon a showing by either party, though they do not usually make such an order unless requested by one of the parties. Section 3816, Revised Code of 1928, reads as follows:

"§ 3816. *Jury to be admonished on separation.* If the jury are permitted to separate, either during the trial or after the case is submitted to them, they shall be admonished by the court that it is their duty not to converse with or suffer themselves to be addressed by any other person on any subject connected with the trial."

We are unable to see wherein appellants have any cause for complaint since the order was made at the request of appellees and if there was any resentment on the part of the jury it would undoubtedly have been the appellees who would have suffered from it.

Appellants produced a witness, one Ed Araghan, who ran a farm he had purchased from the appellant, the United Verde Extension Mining Company, at least in part, and which was located about a mile and a half down the Verde River from that company's smelter. On his examination-in-chief he testified that he raised alfalfa on this farm and that when it was burned or hurt by the smelter smoke, a lot of which was around this place, he cut and fed it to his dairy cows and that it did not hurt either them or their milk. On cross-examination appellees' counsel, referring to this land, said: "Q. All of that land has got a smoke easement on it. A. Yes. Q. All of this land has got it, has it? A. Yes. Mr. Crable: We object to that as wholly immaterial. What has an easement got to do with it? It has no bearing on the issues of this case." After some argument between counsel and in the absence of a motion to strike the court ruled that the witness might answer, whereupon practically the same questions and answers were repeated.

The purpose of the testimony, appellants argue, was to show that some of the lands in the Verde Valley were held under smoke easements and that payment had been made to certain farmers for alleged smoke damage to their land and crops in order that the jury might be given the impression that since one of the appellants had bought peace from claims of smoke damage upon lands in the vicinity of appellees it was an admission that they were liable in this instance also. The answer was permitted notwithstanding the witness had been interrogated in chief only as to the effect of the smelter smoke on his alfalfa, and appellants contend that the fact that there was a smoke easement on the land of the witness could have thrown no light whatever on the extent of the damage to the crops of appellees. This would seem to be true, and even if the purpose of its introduction

was to show the interest of the witness for the purpose of affecting his credibility the query immediately arises, how could the fact that one of appellants owned such easement do this? So far as the record discloses there was no reason why he should have colored his testimony for or against appellants, for he had no unfinished business with them and was in no way obligated to them, and it is difficult to understand how or why the mere fact that he could not, because of this easement, have recovered any damage he might have suffered from the smoke would have led him to do so. The answer to the question, therefore, should not have been allowed, though we are unable to see wherein the information it imparted could have been prejudicial to appellants. The fact that the jurors learned from Araghan that one of the appellants had procured a smoke easement on or over his land does not indicate that they treated this information as an admission that the smoke damaged the crops on the land of appellees also and that in consequence appellants became liable therefor. The contour of the country down the Verde River is such that the crops on some of the farms are much less seriously damaged by the smoke than others, and in the absence of facts showing that it affected the crops on these two farms located some five or six miles apart practically the same way, it is not apparent how the jury could gain from the fact of the existence of an easement anything that would have influenced it in determining whether appellants were or were not liable.

The contention that it was in effect admitting evidence of a compromise between the owner of the land and the appellant company to permit testimony relative to the easement is without merit. The record is silent as to the terms upon which the easement came into existence. It may, so far as the jury were informed, have represented a value equal to that of the

land itself, and there is nothing showing that it was a settlement of differences between them. In addition, the objection to its introduction was that it was immaterial and irrelevant, and not that it constituted evidence of a compromise. At no time was this idea mentioned and neither of the terms, "immaterial" or "irrelevant," would suggest it. Such being the case this ground of objection was waived in the trial court (*Central Copper Co.* v. *Klefisch,* 34 Ariz. 230, 270 Pac. 629) and cannot be urged for the first time here. *Pawley* v. *First Nat. Bank,* 32 Ariz. 135, 256 Pac. 507.

The case was given to the jury at 4:45 P. M. and at 8:15, or three hours and a half later, it returned to the courtroom with its verdicts, dinner having been served it in the meantime. The trial had consumed ten days, the testimony covering 1575 pages of the reporter's transcript, and in their next assignment appellants claim that the jury was impatient to escape further confinement and gave this tremendous amount of evidence no consideration whatever but rendered its verdict without going into the merits of the case. While it might appear that a proper consideration of such a volume of testimony would require a longer period of time than the jury took in this case, yet we can by no means say that it was impossible for it to consider the testimony sufficiently to reach a verdict within the time it did. We have been cited to no authority holding that the short time a jury deliberates before returning its verdict is ground for reversal. Appellants, in fact, admit that this is true, though they say that in the cases in which the doctrine is upheld the trials were simple in their nature, with but few facts to be found. The facts in this case are, it is true, numerous, yet they are not such that it would be difficult for a jury properly to appraise them.

That the jury did not properly consider the merits of the case in arriving at its conclusion is further

shown, appellants contend, by the fact that the verdicts were excessive and were given under the influence of passion and prejudice. The amount sought from the two appellants was $24,827.36 but the two verdicts total $5,000, and this was intended to compensate appellees for the loss of crops on approximately sixty acres of land for the years 1928 and 1929, or, roughly speaking, $2,500 a year, which would mean between $40 and $50 per acre. Some of the land was planted in alfalfa, some in wheat and much of it in vegetables of various kinds, and the depressed, economic condition of the country had not yet begun. The court would not be justified in upsetting the verdicts upon this ground.

The smelters of the defendants are located about three miles apart and the smoke from that of the United Verde Copper Company was carried by the wind currents toward the smelter of the United Verde Extension Mining Company and when it reached there or thereabouts it merged with the smoke from the latter and in this form was driven by the wind on down the river where it came in contact with the crops on appellees' farm. Under these conditions it is plain that it was necessary for the jury to determine what proportion of the damage caused by the smoke was attributable to each of the smelters and for the purpose of aiding it in solving this question appellants offered and requested the following instruction: "If you find from the evidence that plaintiffs have suffered damages from the combined smoke of the smelters of the defendant corporations, then it is your duty to determine from the evidence what portion thereof, if any, was caused by the smelter smoke of the United Verde Copper Company and what portion thereof, if any, was caused by the smelter smoke of the United Verde Extension Mining Company, and you are instructed that if from the evidence you are unable to determine the relative pro-

portions or amounts of damages, if any, to be found against the respective defendant corporations, then your verdict must be for the defendants and each of them.'' This instruction, however, was refused but the court gave instead one submitted by appellees which was framed to meet the requirements set forth in *United Verde Extension Min. Co.* v. *Ralston,* 37 Ariz. 554, 296 Pac. 262; hence, the refusal to give the instruction was not error. The question of the apportionment of damages between these two smelters in a similar case was gone into rather fully at that time and it is unnecessary to discuss it further here.

Between the time the smelters first began operations and the trial of the case in 1931 there had been two years, or at least one and a part of another, in which they did not run, 1921 and 1931, and for the purpose of showing the difference in crop yields between years in which sulphur smoke had and those in which it had not been emitted appellees introduced evidence as to yields on their land in these two smokeless or normal years. And acting upon the theory that this justified the introduction of evidence comparing the yields on appellees' land in 1928 and 1929 with those on other lands in other than smokeless years, appellants offered testimony relative to the extent of the crops grown in 1927 on lands similar to appellees' but located a few miles therefrom and within the vicinity of the smelter of the United Verde Extension Mining Company where, it was avowed, the evidence would show that the smoke was greater in volume, more frequent in visitation, and higher in its $SO_2$ content than at the Kovacovich place in 1928 and 1929, and notwithstanding this, that the yields were in excess of the average of those in the valley and of those appellees testified they should have received from their farms in those two years. Several other avowals of proof along this line were made but the court declined to permit appellants to introduce

evidence as to yields in any other years than 1928 and 1929, the two years sued for, and 1921 and 1931, the two smokeless years, upon the ground that it was irrelevant and cumulative, and this ruling is assigned as error.

Appellants were not denied the privilege of showing crop yields from other farms than appellees' for these four years, and it occurs to us that this afforded them all the opportunity they needed to show comparison in yields. The climatic and smoke conditions are, it is true, presumably the same throughout the valley in any one season, but all the farms along the river are not so situated that they are affected in the same way even in the same year, the crops of some being much more seriously injured than others, and to have gone into the yields of other farms in 1927, or any other smoke year, would have rendered it necessary to establish in addition the same climatic and smoke conditions that existed in 1928 and 1929, and, notwithstanding the avowal of appellants that the proffered evidence would do this, the court was not required, even if it could have done so, to permit further inquiry into collateral matters, and, hence, did not commit error in confining the inquiry to the years to which appellees had limited their evidence. *Harley* v. *Merrill Brick Co.*, 83 Iowa 73, 48 N. W. 1000.

The last three assignments are argued under the proposition that the judgments must be supported by evidence as to losses that is competent and substantial and given by qualified and competent witnesses, and even though it is conflicting the judgment should be set aside if that offered to support appellees' claim is not substantial in its nature or is founded upon guesses or speculation. This is, of course, true as an abstract proposition of law, but a study of the record discloses that while the evidence is in conflict that in support of the verdicts is sufficiently substantial in its nature to uphold them. Appellants have

devoted many pages of their brief to a discussion of the sufficiency and character of the testimony and especially to the qualifications of Tony Kovacovich and Mack Davis as witnesses for appellees, but the objections raised affect in the main the weight rather than the competency of their statements, and, this being true, it would serve no useful purpose to discuss it in detail.

There appearing no prejudicial error in the record, the judgments are affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.