**201 P.2d 741**

**SMITH v. PINNER.**

**PINNER v. SMITH.**

**Nos. 4954, 4961.**

Supreme Court of Arizona.

Dec. 20, 1948.

Rehearing Denied Jan. 20, 1949.

118

Moore, Romley & Roca, of Phoenix, for appellant.

Corbin & Orme and Kramer, Morrison, Roche & Perry, all of Phoenix, for appellee.

GORDON FARLEY, Superior Judge.

This action arose out of a contract which the federal government awarded to Arthur Pinner, Jr., on October 10, 1942, to construct army air fields near Douglas, Arizona. Pinner as prime contractor entered into a subcontract with T. J. Smith, who in turn subcontracted with a coadventure comprised of himself, W. M. Tenney and L. N. Tenney. The coadventure of Smith-Tenney proceeded with the construction of the air fields and had completed about 88 per cent of the work when the difficulties ensued which resulted in this litigation.

Pinner became dissatisfied with the manner in which the job was progressing, and after being advised by the government inspectors that the work was not proceeding according to schedule, he ousted Smith from the job, and concluded the work under an arrangement with the two Tenneys. Smith thereupon filed suit against Pinner and the Tenneys and the bonding company for an accounting and requested appointment of a receiver because of the alleged collusion and fraud that had been used by them to deprive him of his interest in the subcontract. Pinner denied the allegations of wrong conduct, but joined in the request for the appointment of a receiver.

On March 16, 1943, the court denied the appointment of a receiver, but granted an injunction, the effect of which was to sequester the funds and assets of Smith-Tenney and any funds due under the prime contract. Thereafter the court proceeded to disburse by court order the money due under the contract to various persons and in fact performed the duties of a receiver.

On December 14, 1945, the court ordered that on stipulation of counsel the causes be set for trial on February 19, 1946, and that all parties to the action be permitted to file such amended pleadings as they desired. In pursuance of that order Smith filed his first amended complaint on January 31, 1946.

During the trial of the case plaintiff (Smith) dismissed as to Tenneys and the court directed a verdict in favor of the bonding company, and subsequently the

jury considered the fraud phase of the case, and on that aspect it found in favor of plaintiff in certain particulars, which will be hereafter noted. The trial court then dismissed the jury and proceeded to hear evidence on the "accounting angle" presented by defendant Pinner's counterclaim, and rendered judgment in favor of Pinner on that aspect in the sum of $ ,562.70. Pinner has appealed from the judgment entered on the verdict of the jury, and Smith has perfected a separate appeal on the judgment rendered against him by the court on the so-called "accounting angle" of the case. These cases were ordered consolidated on appeal.

As the facts are somewhat involved, the foregoing will serve as a brief statement for the purposes of this opinion. The other pertinent facts will be pointed out in connection with the various propositions of law in support of the assignments of error, and for the sake of clarity Smith will be referred to as the plaintiff and Pinner as the defendant.

The first point urged by defendant is founded upon the proposition that the trial court improperly permitted the amended complaint to be filed, inasmuch as it constituted a departure from the original complaint; and for the further reason that it was filed without leave of court after the cause had been placed on the trial calendar. The defendant contends that the original complaint set up an equitable action for an accounting pursuant to the terms of the contract, while the amended complaint was a negation of the contract and set up an action based upon fraud. An examination of the pleadings supports that position in some respects at least, but in view of the broad stipulation that all of the parties were permitted to file such amended pleadings as they desired the defendant cannot now be heard to complain on that ground, as the stipulation constituted an express waiver of such an objection. 50 Am.J., Stipulations, Sections 9, 10, 11. The case of Mitchell v. Vulture Mining & Milling Company, 47 Ariz. 249, 55 P.2d 636, generally supports the liberal view with respect to allowance of amendments of pleadings.

The second proposition urged by defendant is that the plaintiff elected one of two inconsistent remedies when the action was filed, in that the matters contained in the original complaint sounded in contract and that the matters alleged in the amended complaint sounded in tort. Consequently it is urged that plaintiff has elected which of two inconsistent remedies to pursue, and that he is bound by that election, and that it follows that the court erred in permitting the amended complaint to be filed for that reason. Prior to the adoption of our new rules of civil procedure this contention would constitute a correct statement of the law, but the adoption of the Rule 8(e), which is Section 21-408 of the Arizona Code Annotated 1939, authorized pleadings

which contained inconsistent statements of the pleader's claim. Under such circumstances the theory of election of remedies in this instance is not applicable. Julian v. Carpenter, 65 Ariz. 157, 176 P.2d 693.

█ Defendant's next assignment raises the plea of the statute of limitations as to the tort allegations contained in the amended complaint. The original complaint was filed on March 2, 1943, and the amended complaint was filed on January 31, 1946. An analysis of the original complaint discloses that it was primarily an action on the contract and sought an accounting of the funds derived from the government. It is true that the original complaint also contained general allegations of conspiracy, but under the ruling of this court in Sandoval v. Randolph, 11 Ariz. 371, 95 P. 119, such allegations amount to nothing more than the pleader's conclusions and are regarded as mere surplusage. The complaint stated a good cause of action for receivership in winding up the affairs of the coadventure and for an accounting, independently of allegations of conspiracy. The amended complaint, in addition to the claims based on the contract, contained allegations seeking relief for alleged tortious acts. As to those matters the amended complaint created a new cause of action, and consequently as to such matters it did not relate back to the time of filing of the original complaint so as to avoid the plea of the statute of limitations. Daniel v. City of Tucson, 52 Ariz. 142, 79 P.2d 516, 117 A.L.R. 1211; Kunselman v. Southern Pacific R. R. Co., 33 Ariz.

250, 263 P. 939; White v. Holland Furnace Company, Inc., D.C., 31 Fed.Supp. 32.

█ According to the allegations of the original complaint and the amended complaint, defendant assumed control of the work on January 21, 1943, and defendant contends that the statute of limitations should in any event begin to run from that date. A careful scrutiny of the amended complaint does not bear out that position, as it does not affirmatively appear in the amended complaint that the new matter complained of occurred on that date or prior thereto so as to invoke the statute of limitations. On the contrary, the amended complaint discloses that the alleged torts occurred subsequent to the filing on March 2, 1943, of the original complaint, and during the time the court was acting as receiver. This position is further borne out by a reference to the direct examination of the plaintiff appearing at page 141 of the transcript of testimony, wherein he stated that the suits filed against him, which he was compelled to defend, were subsequent to the time defendant took possession of the Douglas job. Under the rule of Daniels v. City of Tucson, supra, the assignment on that ground is without justification.

█ The fourth proposition presented by the defendant is based upon the plea of res judicata because of a judgment of dismissal rendered in the United States District Court for the District of Arizona (Phoenix Division) involving the parties to

this action.[1] In that suit the United States of America, for the use and benefit of T. J. Smith as plaintiff and Arthur Pinner, Jr., and the United States Fidelity and Guaranty Company, a corporation, were defendants. The action was brought under section 270a and 270b of Title 40 U.S.C.A., and sought recovery on the payment bond required by the government under the foregoing section against the defendants for services and materials furnished under the contract. The defendants in that suit pleaded payment of all obligations under the contract and also that Smith had agreed to indemnify the United States Fidelity and Guaranty Corporation for any loss by reason of its having become surety on the bond sued upon. The United States District Court held the agreement to indemnify the surety was a good defense an dismissed the action as to both defendants. Pinner admits that the judgment dismissing that action as to him was probably erroneous, but he nevertheless takes the position that since the issues were joined on the merits of the allegations of Pinner's indebtedness to Smith the judgment is final on its merits and constitutes a good defense to this action on the theory of res judicata.

We have been cited to no authority where the plea of res judicata was approved under such a fact situation, and we cannot in good conscience invoke the principle of res judicata in this instance where it clearly appears that no disposition was made in the United States District Court on the merits as to any issues existing between the parties in this action. The doctrine of res judicata is not to be applied so rigidly as to defeat the ends of justice. 30 Am. J., Judgments, Sections 161, 198, 207. In no event would the plea of res judicata have any application to the tort allegations in the amended complaint, as the action in the District Court was based solely on the contract.

■ In his fifth proposition defendant contends that plaintiff condoned any breach of contract on defendant's part. Our examination of the evidence in that respect does not bear out defendant's contention.

Defendant's sixth proposition of law is founded upon the rule that a release of one joint tort-feasor has the effect of releasing all. Pinner points out that during the course of the trial plaintiff's counsel moved to dismiss as to the two Tenneys and that consequently the dismissal should be effective as to him as well.

■ The general statement of the rule is correct, but its application in this instance is not. There is a vast difference between a release, which is ordinarily executed for a consideration, and a dismissal or non-suit. This court has recognized the general rule that where joint tort-feasors are jointly sued a failure of proof as to one would not defeat the action as to the other. Lally v. Cash, 18 Ariz. 574, 164 P. 443; Union Auto Transp. Company v. Mattingly, 35 Ariz. 373, 278 P. 368. The annotations

---

[1] No opinion for publication.

122

in 50 A.L.R. 1091, 66 A.L.R. 213; 104 A.L.R. 860, and 124 A.L.R. 1315, further support the distinction here noted.

The second portion of the sixth proposition urged by defendant is that persons jointly affected by a tort must join as parties plaintiff in an action to recover damages sustained thereby. We fail to see its application to the case at bar, inasmuch as plaintiff charged the two Tenneys with being parties to the torts allegedly committed against him. Furthermore, if defendant deemed the Tenneys as necessary parties for a complete determination of the action, he should have resisted plaintiff's motion to dismiss as to them. The record is silent in that regard, and he may not now interpose such a contention.

The seventh proposition of law urged by defendant is that fraud is never presumed but must be established by clear and convincing testimony; nor can it be found to exist on a mere suspicion of the possibilities thereof. In support of that statement is cited the case of Rice v. Tissaw, 57 Ariz. 230, 112 P.2d 866, which does so hold.

This proposition, it may be assumed, is pointed to the finding of the jury wherein it affirmatively found in answer to an interrogatory requested by defendant that defendant entered into a fraudulent scheme having as its object the defrauding of plaintiff and the acquisition by fraud of plaintiff's interest in the contracts with defendant and the United States Government and the proceeds of the Douglas job.

An examination of the transcript of testimony leads us to believe that there was no basis for the jury to reach such a conclusion. Judged by the yardstick announced by this court in Rice v. Tissaw, supra, the evidence of fraud or of any fraudulent scheme falls far short of being clear and convincing. In fact it cannot be said to raise even a mere suspicion of fraud.

The trial court in its "Decision and Order for Judgment" filed August 19, 1946, found that the "moral obliquity of the defendant was not such as to deprive him of his right to recover on the contract." From this statement alone it is apparent that the evidence of fraud, in the view of the trial court, was far from clear and convincing. It approximates negligence, perhaps, but is not the equivalent of actionable fraud. Fraud is usually defined as malfeasance, a positive act resulting from a wilful intent to deceive. 23 Am.Jur.Fraud, Deceit, Section 11.

The only substantial evidence in the entire record which can even remotely be construed in support of the allegation of fraud pertains to the claim for extra work. It appears that defendant, after considerable perseverance and over the objection of the army engineers on the job, and after their rejection of the claim, succeeded in obtaining approval by the Central Claims Office of the item for extra work. It required a strained construction indeed for the jury to

find that such conduct amounted to clear and convincing evidence of either actual or constructive fraud.

However, we do not take the view, as does the defendant, that the jury's entire verdict was based upon such an erroneous finding of fraud. The verdict contains three items which were unquestionably based upon fraud. Those were the items awarding the amount of $10,000 for damages to plaintiff's credit and financial reputation; the item awarding the amount of $1,800 for defense of suits and bankruptcy proceedings; and the item awarding $5,000 to plaintiff for anticipated profit. The other items which the jury awarded Smith are referable to the contract and they should be permitted to stand.

Defendant's eighth proposition is disposed of under our holding with respect to the preceding proposition.

In his ninth proposition of law defendant urges that when compensatory damages are susceptible of proof with substantial accuracy, even in cases of tort, they must be so proved, and that no substantial recovery may be based on anything except evidence which justifies an inference that the damages awarded are just and reasonable. We are at a loss to comprehend the reason why defendant seeks to apply that rule in this instance, since it could not redound in his favor. However, that statement is supported by the holding of this court in the case of Spain v. Griffith, 42 Ariz. 304, 25 P.2d 551, and we reaffirm it.

In his tenth proposition, defendant asserts that he had a legal right under his contract to assume control of the job and that consequently he is not liable for any damages sustained by plaintiff. Had this point been clearly presented in the lower court as an issue of fact, the conclusion thereon might have obviated this appeal. Our study of the record reveals the hopeless confusion which enshrouded all concerned as to the issues before the court. This is an instance wherein Rule 16 of the Rules of Civil Procedure, A.C.A.1939, § 21-453, providing for a pre-trial conference to simplify the issues would have been a wise step and would have considerably reduced the voluminous record before this court. In any event, however, such an issue was never clearly presented in the trial court, and we do not feel obliged to pass upon it in this appeal, particularly since our view with respect to the evidence of fraud, as pointed out in defendant's seventh proposition of law, requires a modification of the judgment in plaintiff Smith's favor in the sum of $32,002, which judgment is reduced to the sum of $15,202. Section 21-1832, A.C.A.1939.

The eleventh point urged by defendant contains an objection to the allowance by the trial court of certain items of cost. We do not think the court abused its discretion in that respect under Section 21-1204, A.C.A. 1939.

The assignments of error urged by plaintiff are based upon the assumption that the verdict of the jury on the fraud

124

phase will be sustained in this appeal, and since our holding is to the contrary no object can be served by any discussion of the cross-assignments of error.

Since the defendant has prevailed in part on his appeal from the judgment based on the verdict of the jury under Section 34-121, A.C.A.1939, he is entitled to recover his costs in this court, and it is therefore adjudged that he is entitled to his costs in Causes No. 4954 and 4961.

Judgment affirmed as modified with directions to the trial court to enter a judgment in accordance with this decision.

STANFORD, C. J., and LA PRADE, J., concur.

Justice LEVI S. UDALL having disqualified himself as he was the trial judge, Honorable GORDON FARLEY, Judge of the Superior Court of Santa Cruz County, was called to sit in his stead.