Ke-tuc-e-mun-guah *v.* McClure.

No. 13,694.

KE-TUC-E-MUN-GUAH *v.* McCLURE.

INDIANS.—*Promissory Note.—Execution of by Member of Tribe.—Binding Obligation.*—A promissory note executed by a member of a tribe of Indians residing upon a reservation, and adhering to their ancient manners and customs, is an enforceable obligation.

SAME.—*Lands not Subject to Sale.—Answer Alleging.—Insufficiency of.*—In a suit upon such note a paragraph of answer alleging that under an act of Congress certain lands of the reservation had been set off to the defendant in severalty, and, therefore, were not subject to levy and sale, with a prayer that the plaintiff be enjoined from levying any execution that might issue on the judgment (it not appearing that the plaintiff was threatening to levy upon the land described in the answer), does not state a defence to any part of the defendant's action and is demurrable.

JUDGMENT.—*In Excess of Prayer.—Amendment of Complaint.—Supreme Court.*—Where it is assigned as error that the circuit court erred in overruling a motion for a new trial, the judgment having exceeded

the amount claimed in the complaint, but not the amount due, the Supreme Court will regard the prayer of the complaint as having been amended.

From the Grant Circuit Court.

*G. W. Harvey,* for appellant.

*A. Taylor,* for appellee.

COFFEY, J.—This was a suit by the appellee against the appellant, based upon a promissory note dated March 7th, 1872, and due one day after date.

The appellant answered : *First.* Admitting the execution of the note in suit, but averring that the appellee ought not to recover on the same because he is a member of the Miami tribe of Indians ; that he was, at the date of said note, and at the time the debt for which it was given accrued, to wit, in 1870 and 1871, and has at all times since continued to be, up to the present time, a member of the band of Me-shing-go-me-sia, and has at all times been, remained and resided upon a reservation, containing six thousand four hundred acres of land, situate in the counties of Grant and Wabash, in the State of Indiana, reserved by the Miami Indians in their treaty of 1838 with the United States to the band of Ma-to-sin-ia, which reserve is again referred to in the treaty of 1840 between the same parties, by which, as amended by the Senate, the United States agreed to convey said land by patent to Me-shing-go-me-sia in trust for his band, who have ever since remained upon said lands ; that said Me-shing-go-me-sia remained the chief of said band until his death which occurred in the year 1877 ; that immediately upon his death the said band, in accordance with their ancient customs, proceeded to and did select William Peconga, one of said band, as their chief, who is still acting as such ; that up to the 1st day of January, 1881, they lived upon their said lands, practicing and adhering to their ancient manners and customs, holding but little intercourse with the whites, from choice ; that they settled their troubles and disputes among them-

selves without resorting to the courts of the State; that in their intercourse with each other they speak their own language; that the greater part of said tribe can not speak the English language intelligently; that their tribal organization still remains unaltered; that they hold their councils for the same purposes as in former times, and are governed by their ancient customs; that said band did not go into the courts of the State for any redress until the year 1881; that they are a distinct people; that they did not until the 1st day of January, 1881, participate in our civil or political privileges, nor were they in any way regarded as members of our body politic, having no right to vote or participate in our elections, or to serve in any official capacity; that they were in every particular wards of the United States, and not bound by or amenable to the laws of the State of Indiana; that the defendant has at all times since his birth remained with and participated in the ancient manners, customs and rights of said band as one of its members, and fully acted with said band, taking upon himself and exercising no other or different rights or privileges than the band, as a whole, used or exercised as heretofore stated; that he has never at any time since the 1st day of January, 1881, or since the execution of said note, agreed or contracted or consented to pay said debt, or in any manner acknowledged the same, but has at all times repudiated and refused to pay the same or any part thereof.

The second paragraph of the answer avers, substantially, the same facts as those set out in the first paragraph, with the additional averments that the lands reserved to the band of Miami Indians, of which the appellant is a member, have been partitioned among the members of said band under an act of Congress, by means of which certain of said lands have been set off to the appellant in severalty; that the debt for which the note in suit was executed accrued in 1870, and that his lands so set off to him under the act of Congress are not liable to levy and sale for the payment of said debt.

Prayer that the appellee be enjoined from levying any execution that may issue on a judgment rendered upon the note in suit upon said land, or from interfering with the same in any manner.

To these answers the court sustained a demurrer, and the appellant excepted.

A trial by the court resulted in a finding and judgment for appellee, from which this appeal is prosecuted.

The assignment of errors calls in question the correctness of the ruling of the circuit court in sustaining the demurrer to these answers, as well as the propriety of the ruling in overruling a motion for a new trial.

It is earnestly contended by the appellant that the band of Indians, of which he is a member, are wards of the United States Government, and that by reason thereof each member of said band is under legal disability, and is incapable of making a binding contract.

It is admitted by the appellee, as we understand his brief, that the band to which the appellant belongs is, in a sense, the ward of the government of the United States, but it is denied that any law exists creating a general legal disability, and that the individual members of said band are prohibited from contracting debts and making such contracts as the one now in suit.

As. all persons not under legal disabilities are capable of making and entering into binding contracts, it follows that the note in suit is a binding obligation, unless it can be shown that the appellant, at the time of its execution, was under duress or some legal disability, or unless it can be shown that the making of such note was prohibited by some law or contrary to public policy. In support of his contention the appellant cites the cases of *Cherokee Nation* v. *Georgia*, 5 Peters, 1, *Worcester* v. *Georgia*, 6 Peters, 515, and *Goodell* v. *Jackson*, 20 Johns. 693.

While it was held in the case of *Cherokee Nation* v. *Georgia, supra*, that the Cherokee Nation was a separate State, a

distinct political society, separated from others, capable of managing its own affairs and governing itself, it was held, also, that it was not a foreign State in the sense of the Constitution of the United States, and could not maintain an action, as such, in the courts of the United States.

The case of *Worcester* v. *Georgia, supra,* was a prosecution against Worcester, a white missionary, who resided within the territory reserved by treaty with the government of the United States to the Cherokee Nation. The prosecution was instituted under a law of the State of Georgia, making it a penal offence to reside in that territory without a license from the Governor of the State. It was held that the Cherokee Nation was a distinct community, occupying its own territory, with boundaries accurately described, in which the laws of the State of Georgia could have no force, and which the citizens of Georgia had no right to enter, except with the assent of the Cherokees themselves, or in conformity with the treaties, and with the acts of Congress, as the whole intercourse with that Nation was by the Constitution and laws vested in the United States.

While the learned chancellor in the case of *Goodell* v. *Jackson, supra,* gives a comprehensive review of the acts of Congress relating to the various tribes of Indians, and the treaties made with them, and reaches the conclusion that they are to be regarded as separate and distict nations, subject, however, to the protection of the general government, the case depended wholly upon the statutes of the State of New York, and the questions then adjudicated can have no bearing upon the question now here for determination. Indeed, there would seem to be no doubt that the different Indian tribes residing within the territory of the United States, while they keep up their tribal relations, are to be regarded, in the absence of some act of Congress upon the subject, as separate and distinct nations. The government has always treated with them as such, and when engaged in war against the whites, they have

never been treated as rebels, subject to the law of treason; but, on the contrary, have always been regarded and treated as separate and independent nations, entitled to the rights of ordinary belligerents and subject to no other penalties.

Acting upon the theory that the Indians maintaining their tribal relations, residing on reservations secured to them by treaties with the United States government, constituted separate and distinct nations, and following the law as announced in the case of *Worcester* v. *Georgia, supra,* it was held by this court in the case of *Me-shing-go-me-sia* v. *State,* 36 Ind. 310, that this State had no power to tax the lands reserved to the tribe to which the appellant belongs. But none of these cases decide that an Indian belonging to a tribe or nation has not the power to make a contract of the kind now before us; and our attention has not been called to any law which prohibits him from making such contract. Very many of the acts of Congress, as well as the adjudicated cases, proceed upon the theory that an Indian may bind himself by an ordinary executory contract, and may contract debts. Most, if not all, of the acts of Congress granting annuities to the Indians provide that such Indians shall not be bound by any contract whereby such annuity is disposed of or pledged before the same is actually paid by the government.

By the U. S. R. S. 1878 (2d ed.), sec. 2103, it is provided that "No agreement shall be made by any person with any Indians, or individual Indians, not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands, or to any claims growing out of, or in reference to, annuities, instalments, or other moneys, claims, demands, or thing under laws or treaties with the United States, or official acts of any officers thereof, or in any way connected

with or due from the United States, unless such contract or agreement be executed and approved as follows."

It does not appear that the contract in suit falls within the class of contracts prohibited by this act of Congress. Unless it appears that such contract falls within the provisions of this statute, or some other statute rendering it illegal, it must be held to be valid and binding. *Godfroy* v. *Scott,* 70 Ind. 259.

In our opinion the court did not err in sustaining the demurrer to the first paragraph of the answer.

The second paragraph of the answer does not state a defence to any part of the plaintiff's cause of action. The fact that the lands set off to the appellant may not be liable to levy and sale for the payment of the appellee's judgment furnishes no sufficient reason why judgment should not be rendered. The appellee may be able to collect his debt without resort to the land. As there is no pretence that the appellee is threatening to levy upon the land described in the answer, there is no ground for an injunction. Furthermore, the pleading is not a cross-bill, seeking affirmative relief, but is an answer.

The court did not err in sustaining the demurrer to this answer.

The only matter urged under the assignment of error calling in question the action of the court in overruling the motion for a new trial, is that the judgment exceeds the amount claimed in the complaint. It is not claimed that the judgment exceeds the amount due on the note, but it is contended that the court erred in rendering judgment for a sum in excess of that covered by the prayer of the complaint. This contention can not be maintained.

The appellee could have amended the prayer of his complaint at any time, and this court will regard the amendment as having been made in the circuit court. *Carpenter* v. *Sheldon,* 22 Ind. 259 ; *Webb* v. *Thompson,* 23 Ind. 428.

There is no error in the record.

Judgment affirmed.

Filed March 15, 1890.