[No. 6928.]

ALTHOFF MANUFACTURING Co. *v.* ALTHOFF, ET AL.

1. PLEADINGS—*Motion for Judgment on Pleadings—Waiver—* A party who, after his motion for judgment on the pleadings is denied, goes to trial, attempting to establish his right by proofs, waives the motion—(505).

2. ——*Amendment*—Where at the conclusion of the plaintiff's case the defendant tenders an amended answer, putting in issue the question to which the plaintiff's testimony has been directed, the amendment should be allowed—(505, 506).

3. CONTRACT—*Construed*—A partnership, by a written agreement transferred to a corporation "all the assets real and personal" of said firm, "standing in our name and now a part of the property of the firm." An inventory was referred to and it was declared that the property sold includes "good will, all leases, outstanding moneys accounts, contracts, choses in action, patents or inventions incident to the business . . . whether included in said inventory or not, and all things in general owned or used by said firm in the conduct of its business." Held that the purchase included the plant of the partnership with the fixtures, appliances, machinery, moneys, accounts and assets, connected therewith, and incident thereto; that the stock of another corporation, earned prior to the sale, the existence of which was unknown to the corporation, at the time of the purchase, was not included, even although such stock still stood in the partnership name; that not being known to any officer of the

corporation purchasing, such stock could not have been relied upon as a consideration inducing the purchase—(506-508).

4. ——*Construction by Conduct of Parties—Held;* in the same case that the corporation, having accepted the plant and appliances, and conducted the business for almost two years without objection, had in effect admitted that it was entitled to nothing more; that such conduct was a virtual interpretation of the contrcat—(508).

*Error to Denver District Court.*—HON. HARRY C. RIDDLE, Judge.

Messrs. MCKNIGHT & HENRY, for plaintiff in error.

Mr. FRANK T. JOHNSON, for defendants in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

For several years prior to December 1, 1906, William F. Althoff and Edward H. Althoff, partners under the firm name and style of W. F. Althoff & Son, carried on in Denver a business of manufacturing ice-making machinery and ice-making plants. In the latter days of November of that year Fred Klink, B. Uhlfelder and A. L. Abrahams incorporated the Althoff Manufacturing Company, to take over the business above referred to of W. F. Althoff & Son. The plan of organization was to incorporate with a full paid capital stock of $100,000., all of which was issued, except $300. of it that went to the incorporators of the new company to qualify them as directors, to W. F. Althoff & Son, in payment for the partnership property, and some patent devices, owned by the members thereof individually. Of this stock the Althoffs were to retain $41,000 worth, and cover into the treasury of the company the balance, in face value $58,700., a part of which was bought by Abrahams and

others at par.  Upon the completion of the incorporation, the two Althoffs, Klink, Uhlfelder and Abrahams became its directors; W. F. Althoff was chosen president and treasurer and E. H. Althoff vice-president and manager; Uhlfelder became secretary and bookkeeper; the business that had been theretofore carried on by the partnership was continued under the management of the above named directorate, of which Abrahams and his associates were in control, without interruption for nearly two years. In the early part of 1906, preceding the incorporation, the two Althoffs, in the prosecution of their partnership business, erected an ice plant at Rocky Ford, Colorado, for the Rocky Ford Ice & Mercantile Company, and received in payment stock of that company of the value of $16,000., which stock is the subject matter of this controversy. The cost of the erection of the Rocky Ford plant was borne by the partnership, and the stock issued in payment for the work done and materials furnished became a part of the property and earnings of Althoff & Son, prior to the incorporation of the new company, and the agreement of sale and purchase herein involved.  On November 30, 1906, the incorporators of the plaintiff company met at the office of W. F. Althoff & Son, there being present the two Althoffs, Klink, Uhlfelder and Abrahams, and a written proposition from the Althoffs to sell their partnership to the Althoff Manufacturing Company was then and there submitted and accepted.  That proposition and acceptance is as follows:

"Denver, Colo., Nov. 30, 1906.
To the Althoff Manufacturing Company,
    Denver, Colo.

Gentlemen:—
    We, W. F. Althoff and Ed. H. Althoff, individually

and as members of the firm of Althoff & Son, doing business in the city and county of Denver and state of Colorado, at No. 1411-1415 Wazee street, on behalf of said firm and of ourselves, hereby propose to sell to your company for the consideration hereinafter mentioned, all the assets, real and personal, of said firm or standing in our name and now a part of the property of Althoff & Son. An inventory of said property has been made and is found in that certain book marked........for identification and which we surrender to you for better description of said property. The property proposed to be sold includes good will, all leases, outstanding moneys, accounts, all contracts, policies of insurance, claims and choses in action, patents and patentable ideas, or inventions incident to the business for which your company as a manufacturing corporation has been created, whether included in said inventory or not, and all things in general owned or used by said firm in the conduct of its business at said No. 1411-15 Wazee street.

We will sell you the above referred to property in consideration of your issuing to us the entire capital stock of your company, except so much thereof as the individual members of your board of directors must retain under the laws of this state as such directors, and in consideration of your assumption of the outstanding liabilities of the firm of Althoff & Son.

Respectfully submitted,

(signed) W. F. ALTHOFF.
(signed) E. H. ALTHOFF.

The above proposal is hereby accepted.

(signed) A. L. ABRAHAMS
(signed) B. A. UHLFELDER.
(signed) FRED KLINK.

**Directors.**"

Later, and in due course, Althoff & Son disposed of the stock in the Rocky Ford company as their own property for $16,000. This suit is by the Althoff Manufacturing Company against the two Althoffs to recover the proceeds of that sale. In the court below defendants prevailed, the cause having been dismissed, and plaintiff brings the cause here for review on error, seeking a reversal of that judgment.

By their answer defendants admit that prior to the sale of their plant to the plaintiff this stock was owned by Althoff & Son, and carried as an asset of the partnership, but deny that it was included in the sale of its ice-making machinery business to the new company. There was a motion by plaintiff for judgment on the pleadings, on the ground that no issue was tendered, because, it is claimed, that by the averments of their answer defendants admit liability to the Althoff Manufacturing Company to account to it for the proceeds realized from the sale of the Rocky Ford company stock. This motion was overruled, and plaintiff proceeded in an attempt to establish its right of recovery by proofs, and so accepted the issue, and treated the case as if the answer of defendants actually raised it. This was, on principle and authority, a waiver of the motion for judgment on the pleadings. Otherwise stated, a party will not be permitted to treat an issue as presented, fully contest it on proofs, and then deny that there was such issue. If plaintiff desired to insist upon that motion and continue to urge it, it should have declined to introduce testimony and should have stood upon the motion and allowed judgment to go against it. But even if this were not so, the record shows that at the conclusion of plaintiff's case the defendants tendered an amended answer which did clearly and unequivocally put in issue the precise matter which had been tried, namely,

whether or not the proposition of sale did include the Rocky Ford company stock. That amendment should have been allowed. But the court erroneously .denied' it, so that for the purposes of this case that issue must· be held to' have been properly before the court for determination.

··    The sole question, therefore, is whether, under· the proposition of sale by defendants and acceptance by plaintiff, the stock of the Rocky Ford company was included. This brings us to a consideration and construction of the contract of purchase and sale, in view· of · the ·evidence adduced bearing on that subject. We are· clearly of· opinion that this stock was never in fact included, or· intended to be included, in the transaction, and especially· so·since the proofs show that the incorporators ·of the new company, the purchaser of the Althoff & Son plant, did ·not even know, when the contract of purchase and sale· was made, of the existence of this stock of the Rocky· Ford company, or that Althoff & Son held or claimed it. ·It is not mentioned anywhere, either in the agreement itself or in the inventory referred to and produced at the trial. The testimony of Mr. Abrahams shows that it was not known that the Althoffs had this stock until over a year and a half after the purchase of their business was consummated. Under such circumstances it is incredible ·that the purchasers of the Althoff plant bargained for something of which they knew nothing, and of which they had never heard, or that the Althoffs intended, or did agree, to sell it. A fair construction of the contract,· read as a whole, is that the Althoff Manufacturing Company intended to buy, and only bought, the manufacturing plant of W. F. Althoff & Son at 1411-1415 Wazee street, Denver. with appliances, fixtures, machinery, holdings, moneys, accounts, claims, choses in action and assets. directly

connected therewith and incidental thereto. The stock in question, is a disconnected and independent thing. While it may be that it belonged to the firm, it clearly represented an investment out of proceeds from that business, prior to the sale thereof to the new company, and it constituted an wholly separate and distinct subject matter from the property which was sold. It represented fully realized profits, entirely disconnected from and independent of the ice-making machinery plant itself, the property which was sold by Althoff & Son and purchased by plaintiff. This stock was never delivered and was never demanded; indeed its very existence is shown to have been unknown to the plaintiff company. If this stock had in fact been sold by the defendants and bought by the plaintiff, it is manifest that its existence would have been known to it, constituting a part of the consideration of the purchase and sale, and it would have been specifically mentioned in the agreement, being an item of such great importance and value compared with the total amount involved in the transaction. Under the facts disclosed, plainly this stock was not relied upon by plaintiff as a part of the consideration of purchase and sale, neither was it an inducing cause of the trade which was made. It can neither be fairly said nor concluded that the parties to this agreement contracted about something of which the purchaser had no knowledge whatever. It was distinctively an outside investment, although purchased with proceeds from the business; a closed incident. The contract of purchase and sale, as we construe it, refers exclusively to those assets and that property of the firm connected with, used in and about the operation of, and incidental to, the ice-making machinery plant. That was what the new company was organized to take over, and that was the character of the business which it was author-

ized to carry on; not the business of dealing in stocks of outside independent companies. This construction of the contract satisfied the plaintiff for upwards of a year and a half, and its subsequent action in seeking to attach another meaning to it seems to be purely an afterthought. · The fact that the plaintiff company accepted the· property which was turned over to it, as satisfying the terms of the agreement, shows conclusively that it got what it bargained for and expected to get, and that nothing additional was or is due. Otherwise no consummation of the agreement would have been effected. The action of the company in taking over and accepting the property offered, and conducting the business for almost two years, without objection, is most convincing proof that it· was to get nothing more. This especially must be so, when it is considered that Abrahams and his associates, at all times, constituted a majority of the plaintiff company's governing and controlling board. Such action was a virtual interpretation of the contract to the effect that its terms were fulfilled by the Althoffs, when they turned over to the plaintiff the property which was in fact tendered and received. . If any outside assets were to be included, they above all others would have, naturally and logically, been specially named. Suppose Althoff & Son had, prior to the sale of their plant, out of profits from their business, invested in bank stock or government bonds. Can it be fairly contended that this sale would carry such· bank stock, or such bonds, unless specifically mentioned as being included in the sale? We think not. And the stock of the Rocky Ford plant is in no different position. ·We are of opinion that, under the contract relied upon and the proofs offered, plaintiff is without right of recovery; so that, it matters little what errors the court may have committed, if any, for they are immaterial and cannot be

prejudicial to one without legal claim. We reach the confident conclusion, upon the whole record, that the judgment of dismissal was right; that the plaintiff got all its contract calls for; and that no cause of action was made out. The judgment is accordingly affirmed.

*Judgment affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE WHITE concur.

Decided April 1, A. D. 1912. Rehearing denied May 6, A. D. 1912.