[Civil No. 3424.   Filed July 11, 1935.]

[47 Pac. (2d) 452.]

N. E. BROOKS and M. J. PILKINGTON, Appellants, v. HAZEL NEER, Appellee.

Messrs. Struckmeyer & Jennings, Mr. Henderson Stockton, Messrs. Sloan, McKesson & Scott, and Mr. F. M. Gold, for Appellants.

Messrs. Wilson, Wood & Compton, for Appellee.

McALISTER, J.—As a result of injuries received in an automobile accident Hazel Neer brought an action for damages against N. E. Brooks and the owner of the car he was driving at the time it occurred, one M. J. Pilkington. She was successful in the trial court and the defendants have appealed from the judgment in her favor and from an order overruling their motion for a new trial.

The complaint alleges that the defendant, M. J. Pilkington, was engaged in the automobile and garage business in Flagstaff, Arizona, under the name of Pilkington Motor Company and that the defendant, N. E. Brooks, was in his employ as a mechanic in the garage. It avers in paragraph three that on the 12th day of June, 1929, M. J. Pilkington was the owner and in the possession of a certain automobile and that "on or about said date said defendant, M. J. Pilkington, ordered and directed his said employee, defendant N. E. Brooks, to take said automobile onto the highway and speed it up and test it out," and in paragraph four that pursuant to this order the "defendant N. E. Brooks drove said automobile out upon the highway for the purpose of speeding it up and testing it out as aforesaid." It appears from paragraph six that late in the afternoon of June 12, 1929, while the plaintiff was riding with one R. O. Raymond in his automobile on highway 66, at a point about one-tenth of a mile south and west of the city limits of Flagstaff, "the said automobile belonging to defendant M. J. Pilkington as aforesaid, while being driven by defendant N. E. Brooks, pursuant to said orders and directions of, and for the benefit of, defendant M. J. Pilkington and as a part of the duties of and in the course of the employment of defendant

N. E. Brooks as aforesaid, was driven into, upon and against the automobile of said R. O. Raymond in which the plaintiff was riding, with such force as to wreck the automobile of said R. O. Raymond, and to cause plaintiff to be thrown with such force and violence against the windshield and front of said automobile of R. O. Raymond, as to inflict injuries in and upon the person and body of plaintiff as hereinafter set forth.''

The complaint continues from this point by alleging more specifically the manner in which the accident occurred, the nature of the injuries and the extent of the damages suffered by the plaintiff, but in view of the questions raised by the appeal it is unnecessary to state these in any greater detail.

It appears from the testimony that the defendant, M. J. Pilkington, owned a Buick coupe, 1928 model, that was not working well, and that one D. L. McKinney, who was employed by him as a salesman and had been using this Buick in the performance of his duties, asked him on the afternoon of June 12th if he (McKinney) ''couldn't get this car stepped up a little, so that it would have a little better pickup,'' and that Pilkington told him ''to take it back to the shop and have somebody to fix it.'' McKinney took it back and the foreman, Ray Hook, assigned N. E. Brooks ''to work it over,'' ''to work with it,'' and ''to tune the motor,'' which, according to Brooks, meant ''adjusting and checking the ignition, timing, starting, distributor points and spark plugs, adjusting the valves, current and carburetor.'' When it was finished, which was practically quitting time that afternoon, both Pilkington and the foreman had gone for the day and Brooks, wanting to be sure that his work was all right, drove it out on the highway, McKinney the salesman, who had taken it to the shop for repairs, going with him at his request. This was the

first time in the two months he had worked there that he had driven a car on the street or highway to test it. Neither Pilkington nor the foreman had given him directions to do this, though he had been told by no one in authority not to test it, nor had he in fact ever been so directed regarding any car, or generally. But he thought, in order to do a complete job, it was necessary after he had worked it over that it be tested and there was no one else in the shop to do it.

They drove out along highway 66, south and west of the city and as they were returning the plaintiff and Dr. R. O. Raymond, who were driving west and south on the same road in the latter's car, saw them coming at a rapid rate of speed several hundred feet away, their car swerving back and forth across the road, and to avoid an accident Dr. Raymond drove his car as near the right edge of the road as he could without going into a ditch and stopped, the point being about one-tenth of a mile outside the city limits of Flagstaff. But just as Brooks and McKinney reached him and the plaintiff, the left rear end of the Buick, as it swerved the last time, struck the left front of his car, and forced it straight back. The plaintiff, seemingly anticipating danger, had grasped the handle of the right door of the car and braced her feet against its footboard to protect herself, but the collision threw her forward and caused her head to crash through the windshield up to her ears. Immediately afterward she drew her head from the hole it had made in the glass, and within a short time stepped out of the car, walked around its front end and observed its condition but after looking the situation over for a few minutes became affected with a terrible nausea and at Dr. Raymond's suggestion got back into the car and was driven home. Before reaching there she complained of a bad feeling on the left side of her face, in the roof of her mouth and

tongue, and of severe pains in her head, and within a short time suffered complete paralysis of her left arm and leg. She had been in constant pain following her injury up to the time of the trial, which was about three and one-half years after the accident, and, though she had then improved to the extent that she had limited use of her left arm and leg, her condition was permanent and such that she will never again be able to engage in a gainful occupation. At the time of the occurrence she was forty-one years of age, in good health, keen and alert mentally and earning $1,800 per year. Her loss in wages up to the time of the trial was approximately $6,000, and in medical and nurse hire, medicines and incidentals, $2,100. It is not necessary to state any more specifically the manner in which the accident occurred, because it is not seriously questioned that it was due solely to the negligence of the defendant Brooks, and though there is some claim that the plaintiff's condition is not the result of the injuries received in the accident there is no occasion to relate at this point the testimony bearing on that question.

Appellants have assigned a large number of errors but have discussed them under fewer propositions of law, the first of which is in this language:

"Before the owner of any automobile is liable for damages resulting from the collision of said automobile in the possession of another upon the theory of *respondeat superior,* it must appear that the person in the possession of said automobile was the agent of said owner and was acting within the scope of his authority at the time and place of the collision."

██ Their position is that the complaint was based upon a specific order by Pilkington directing appellant Brooks to take the automobile out on the highway to speed it up and test it out, that there was no evidence to support this allegation, and that

appellee, having failed to establish it, attempted to rely on the general allegation that Brooks was acting within the scope of his employment at the time of the accident, and that on doing so she rested her case solely upon the presumption that ownership of an automobile in possession of an employee of the owner at the time of an accident raises a sufficient *prima facie* case to show liability on the part of the owner and take the case to the jury. This, they claim, may be done in those instances in which it does not appear that the driver of the car was at the time acting outside the scope of his employment but not otherwise, for the reason that the true rule is that ownership of a car in possession of an employee at the time of an accident simply raises a presumption of liability but this presumption is merely an arbitrary rule the plaintiff is permitted to use as a substitute for proof and is overthrown when the owner of the car shows that the driver, even though his agent, was not at the time acting within the scope of his employment. When this appears by uncontradicted testimony, they urge, the question of liability becomes one of law and leaves no issue of fact for the jury to decide. If the term ''uncontradicted testimony,'' as used in this connection, be regarded in its proper light, that is, as uncontradicted not only by direct evidence but by anything intrinsic in the evidence itself or extrinsic in the circumstances of the case which might cast suspicion upon it, this is a correct statement of the rule in this as in other jurisdictions. *Otero* v. *Soto,* 34 Ariz. 87, 267 Pac. 947; *Blue Bar Taxicab etc. Co.* v. *Hudspeth,* 25 Ariz. 287, 216 Pac. 246; *Baker* v. *Maseeh,* 20 Ariz. 201, 179 Pac. 53; *Tullis* v. *Blue,* 216 Ala. 577, 114 So. 185.

The only testimony in the record bearing on the nature of the employment was given by the appel-

lants themselves and their contention is that it was uncontradicted and, therefore, that it overcame completely the presumption that Brooks' act in driving the car on the highway to test it was within the scope of his employment. Brooks testified that he was hired as a mechanic in the garage, that it was his business to repair cars and that of the foreman to test them, that he was not directed to test this car and that it was the first time in the two months he had worked there that he had tested one. Pilkington's testimony on this point was that Brooks was employed in his garage on a job basis and received a percentage of his labor, and that his job was limited to mechanical work in the shop. If they had been disinterested witnesses, this testimony would perhaps have been under *Otero* v. *Soto, supra,* entitled to full credit and, provided it had the effect appellants claim it had, would have overcome the *prima facie* case, though appellee contends that the fact that they were parties to the action and necessarily interested in the outcome of the case was alone sufficient to justify the jury in disregarding it. Whether, however, the interest of a party without anything further is all that is required to give the jury this right, it is not necessary to determine, because, even though it was not, the record discloses that appellee offered evidence that was sufficiently contradictory of the testimony of Brooks to justify that body in giving it little, if any, weight and the court, upon objection of appellants, declined to receive it. This evidence was a letter written by him under date of August 5th following the accident, in reply to a communication from C. B. Wilson, attorney for appellee, in which he made, among others, the following statement: "I have four witnesses that it was Pilkington's orders to speed the car up and test it which I was doing." The ruling

sustaining the objection was correct in so far as it affected Pilkington and his testimony, but was erroneous as applied to his codefendant, Brooks, because the language quoted tended strongly to impeach his statements that he had not been directed to test cars by driving them on the highway and that it was not his business to test them, and necessarily would have aided the jury in properly appraising what he said. It could not, it is true, have been received as affirmative proof of the fact that he had been ordered to speed the car up and test it, but its purport was such that no additional fact was needed to justify the jury in disregarding his statements relative to testing cars. Hence, if this letter be treated as part of the evidence, as it should be, it follows that any error the jury may have committed in failing to accept the testimony of Brooks in this particular was harmless. It is clear that the letter, instead of leading the jury to a different conclusion on this point, would have been an important factor in causing it to reach the one it did without it.

■ The jury may have felt, however, that the testimony of Brooks on this point was correct but, notwithstanding this, thought the evidence as a whole justified the conclusion that his employment as a mechanic in the garage carried with it authority to test the cars he repaired. Pilkington, it is true, testified that his job was limited to mechanical work in the shop but Brooks, after stating that it was not his business to test cars, testified that no one told him not to test this car, that he had, in fact, never been directed not to test cars he had worked on, that when he finished this one the foreman had gone for the day, and he thought, in order to do a complete job, it was necessary that it be tested. That garage mechanics generally do drive cars on the streets or high-

ways for the purpose of testing them and ascertaining whether their work has been properly done is a matter of common knowledge, and it is plain that Brooks, notwithstanding the fact that he had not tested a car before and it was the business of the foreman to test them, thought this duty devolved upon him that afternoon since testing was necessary and there was no one else there to do it. The fact that his job was, as Pilkington testified, "limited to mechanical work in the shop" does not imply that it was never within his line of duty to leave the four walls of the building to do something as a garage mechanic, such, for instance, as checking ignition, repairing dead batteries, etc., for troubled motorists, but merely that the shop was the place where his principal work was done. The fact that mechanics go on such missions is by no means inconsistent with the idea that they are employed "in" a garage, and neither is the fact that they drive cars on the streets or highways to test them, for only a short space of time is usually consumed in doing this.

Undoubtedly the jury gave much weight to the fact that in testing the car Brooks was not on an errand for himself but was performing a service he thought in furtherance of the work he was employed to do. However, it would not, perhaps, have been justified in concluding that he was within the scope of his authority in performing this service, if he had ever been told not to test cars after repairing them, or if testing them by driving them on the highway had been contrary to the custom of the garage, or an unusual thing to do, but it occurs to us that testing the car under the circumstances and in the particular way he did was not such a departure from his employment as a garage mechanic that it precluded the jury from deciding that he was acting within the scope of

his employment in doing it. If his action in this respect could be said to be a departure at all from his duty, it was, in view of the nature of his employment and the situation confronting him at the time, such a slight deviation as to be immaterial and, therefore, insufficient to render inapplicable the rule of *respondeat superior.* It is not every departure from duty, or in fact, every violation of an expressed direction, that has this effect. *Conchin* v. *El Paso & Southwestern R. R. Co.,* 13 Ariz. 259, 108 Pac. 260, 28 L. R. A. (N. S.) 88. If an employee, at the time an accident occurs, is doing what he was employed to do, the fact that he is not doing it in the way expected is immaterial. *Peters* v. *Pima Mercantile Co.,* 42 Ariz. 454, 27 Pac. (2d) 143; *Danforth* v. *Fisher,* 75 N. H. 111, 71 Atl. 535, 21 L. R. A. (N. S.) 93, 139 Am. St. Rep. 670. Brooks' duties, generally speaking, were to work on or repair cars and the particular order given him relative to the Buick was "to tune the motor," that is, to do what was necessary to give the car a better pick up and speed, and it would seem to follow that it was not merely not outside the bounds of that task but naturally and reasonably within them to advise himself in some proper way whether he had in fact "tuned" the motor before representing that he had by turning the car as fixed back to the person who brought it to him, and the method used in that garage for gaining this information was by driving the car on the highway and testing it. McKinney, who had been using the car in his work as an automobile salesman for Pilkington, and who had been made by the latter his agent for the purpose of having it fixed so as to give it a better speed and pick up, evidently felt it proper for Brooks to follow the usual way of finding out if a good job had been done, for he not only agreed to and acquiesced in the suggestion made by

Brooks when he finished that he wanted to test it but accompanied him on the trip. Brooks' right to make the test was reasonably to be inferred from his employment as a mechanic in the garage.

Appellants contend further, however, that even though the general allegation that Brooks was acting within the scope of his employment finds sufficient support in the facts, the denial of their motion for a directed verdict at the close of the evidence was error, because appellee had introduced no testimony supporting her allegation that in driving the car on the highway to test it Brooks was acting under the specific direction of Pilkington, and to permit her to prove under the general allegation that he had implied authority to do this constituted a fatal variance between the pleadings and the proof. The general allegation of agency, they say, is tied to the specific allegation and instead of broadening the latter is limited and controlled by it. This contention is based not merely on the allegation of specific direction in paragraphs three and four of the complaint but upon the further fact that paragraph six uses the phrase, "pursuant to said orders and directions of, and for the benefit of, defendant M. J. Pilkington," immediately following the clause, "while being driven by defendant N. E. Brooks." The result of this is, appellants claim, to tie the general allegation to the specific and narrow its meaning to that extent. The use, however, of the succeeding phrase, "as a part of the duties of and in the course of the employment of defendant N. E. Brooks as aforesaid," to qualify also the word "driven" discloses an intention upon the part of the pleader to rely on the general as well as the specific allegation. Appellee evidently intended by using both phrases as modifiers of the same word, "driven," to advise the appellants that

she rested her claim on two grounds; first, that Brooks was driving the car pursuant to the direction of Pilkington, and second, that he was driving it as a part of his duties and in the course of his employment. Neither ground is dependent upon the other and it was appellee's privilege to rely on whichever she saw fit. General allegations are controlled by averments of specific ones only when the latter necessitates an inference by a reasonable person that is not consistent with the general allegation. *Ft. Wayne & N. I. Traction Co.* v. *Kumb,* 64 Ind. App. 529, 116 N. E. 309. The allegation of specific direction to test the car is not inconsistent with the general averment that it was done in the course of his employment, because Brooks could have performed this task pursuant to a direct order without going outside or beyond his employment as a mechanic in the garage. The two allegations are independent of each other but not inconsistent.

There is an additional reason why appellee's inability to introduce direct proof of the allegation of specific direction did not justify a directed verdict for appellants. At the close of her testimony and for the purpose of conforming the complaint to the express language of Pilkington's direction she requested permission to amend her complaint by eliminating from paragraph three the words "to take said automobile onto the highway and speed it up and test it out" and substituting therefor the language "to fix said automobile; to step it up a little so it would have a little better pick up" and by striking from paragraph four the last two words "as aforesaid." This request was denied and, notwithstanding the right to amend any time after five days preceding trial is discretionary with the court, we think, in view of the situation confronting it at the time, the amend-

ment should have been permitted because neither Brooks' nor Pilkington could have been surprised or prejudiced by it. Both of them knew from the day of the accident what Pilkington's direction to Brooks was and from the day the complaint was served on them that appellee would be unable to prove it as she had alleged it and in all probability would seek to amend her complaint to conform to the facts when she attempted to make this proof and failed.

Moreover, the amendment did not change the cause of action but merely stated what the direction of Pilkington to Brooks actually was and the difference between it and the allegation it was sought to replace was such that it could not have affected appellants in any serious way in making their defense. The fact that appellee, due to Brooks' refutation at the trial of his written statement to appellee's attorney, could not prove Pilkington's direction to Brooks in the specific words alleged was immaterial if she was able to show that he used language sufficiently identical in meaning to justify the conclusion that Brooks was authorized to test the car in the way he did, and the proposed amendment had this effect. The important consideration is that Pilkington's order gave Brooks the right to test the car, the exact language in which he did it being wholly immaterial, and it would be a very narrow construction of an order to a mechanic to fix a car, to step it up a little so it would have a better pick up, to hold that it did not authorize him to find out in some proper way after doing his work whether he had in fact stepped it up and given it a better pick up. The courts are very liberal in permitting amendments to conform to the proof, 49 C. J. 495, and where such an amendment should have been allowed and was not the pleading will be treated on appeal as though it had been made. ''It is a general

rule," to use the language of 4 C. J. 749, "confirmed by statute in many jurisdictions, that, where an amendment of the pleadings was necessary or desirable and the record does not show the amendment to have been made, it will be regarded on appeal as having been made." See, also, *Chicago, R. I. & P. Ry. Co.* v. *King,* 104 Ark. 215, 148 S. W. 1035; *Althoff Mfg. Co.* v. *Althoff,* 52 Colo. 501, 123 Pac. 326; *Kiley* v. *Danahey,* 61 Mont. 608, 202 Pac. 1110; *Ke-tuc-e-mun-guah* v. *McClure,* 122 Ind. 541, 23 N. E. 1080, 7 L. R. A. 782.

Appellee called N. E. Brooks, under the provisions of section 4416, Revised Code of 1928, permitting the cross-examination of an adverse party, and in questioning him did not confine herself to acts occurring just prior to and at the time of the accident, but dealt with those that bore on the question of Pilkington's liability upon the theory of *respondeat superior.* That Brooks had an adverse interest as to the former and was properly cross-examined as to them, appellants admit, but they contend that he had no interest adverse to appellee as to the latter and, hence, that it was error to permit cross-examination of him as to them. The provisions of section 4416 are that "a party to a civil action or proceeding, . . . may be examined upon the trial thereof by the adverse party as if under cross-examination, . . . " and Brooks was one of the two parties defendant. He was not a mere nominal party but one greatly interested in the outcome of the litigation and this is all the statute requires to give the adverse party the right to cross-examine him. The mere fact, that the questions asked him dealt with a phase of the case in which his codefendant might have been more interested than he, did not, since he was a real party in interest in the litigation, prevent his being cross-

examined fully concerning that as well as the other aspects of the case. There is nothing in *Lally* v. *Cash,* 18 Ariz. 574, 164 Pac. 443, in conflict with this view.

Appellee was permitted to show by two witnesses the speed at which the Buick was running some fourteen hundred feet from the point of the collision, and appellants assign this as error, contending that the speed of the car so far away could have had no reasonable relation to the proximate cause of the accident. It is true the rate at which a car is running that far away from the place of an accident would ordinarily be no proof of the miles per hour it was making at the time of collision, but in view of the fact that the evidence in the case discloses that the Buick was coming that far away so rapidly— from fifty-five to sixty miles per hour—that Brooks lost control of it, that it continued at a high rate of speed up to the point of the accident and was swerving back and forth across the road as it approached the car in which appellee was sitting at a speed of between twenty-five and seventy miles an hour, there was no error in letting the jury know its speed that far away. It had a probative effect on the negligence charged, excessive rate of speed at the point of collision, only because it appeared that the speed it was going that distance away, though not maintained completely up to the point of the collision, was not so decelerated that it was not, under the circumstances, still excessive. The evidence was ample to justify the jury in finding that the excessive rate of speed of the car at the point of the accident was the cause thereof. The instruction given by the court, "it is a violation of law to drive an automobile upon the highways of the State of Arizona at a greater rate of speed than thirty-five miles per hour," could not, in view of the succeeding instruction, "when injuries

result from a violation of such law, and the violation thereof is the proximate cause of such injuries, then the delinquent party shall be liable for all damages resulting therefrom,'' have led the jury to believe that it could treat the speed of the car fourteen hundred feet away from the point of the accident as the proximate cause thereof, because this term had been properly explained just a few moments before and, even though a definition had not been given, no reasonable person would have thought for a moment that the speed of the car fourteen hundred feet from the point of collision could possibly have been the cause of the accident.

Appellant's last proposition is that the verdict was rendered under the influence of prejudice and passion and that this is shown by its excessiveness. The testimony discloses that at the time of the accident appellee was forty-one years of age, in good health, a nurse by profession earning $150 per month and, according to the American Experience Table of Mortality, had a life expectancy of more than twenty-five years. Between the day of the accident and the date of the trial, a period of about three and one-half years, she had lost in salary approximately $6,000 and in medical and nurse hire and incidentals the sum of $2,100. It further appears that as a result of the accident she will never again be able to engage in a gainful occupation, hence, the amount she had already lost plus her possible earnings for less than one-half even of her life expectancy would total a sum in excess of the verdict of $24,992.93. It would seem to be clear that a verdict in this amount does not under such facts evidence prejudice and passion on the part of the jury. Whether appellee's injuries were merely superficial cuts around the face and head and her serious physical condition the result of them

or of attacks of illness she had had prior thereto, as appellants contend, were purely questions for the jury, and call for no consideration here.

There are several other assignments but they are without merit and a discussion of them would serve no useful purpose.

The judgment is affirmed.

LOCKWOOD, C. J., and ROSS, J., concur.