324 P.2d 211

Sidney MacNEIL and Helen T. MacNeil,
husband and wife, and Joe Field,
Appellants,

v.

James PERKINS, a minor by his guardian
ad litem, Ernest Perkins, and Ernest
Perkins, individually,

and

Roncevert Garrett, a minor by his guardian
ad litem, Frank D. Garrett, and Frank
D. Garrett, individually,

and

Jack Justice, a minor by his guardian ad lit-
em, James Justice, and James Justice,
individually, Appellees.

Nos. 6277–6279.

Supreme Court of Arizona.

April 16, 1958.

Conner & Jones, and James M. Murphy, Tucson, for appellants.

Udall & Udall, and Benjamin Lazarow, Tucson, for appellees Garrett and Justice.

Benjamin Lazarow and Hymen D. Goldberg, Tucson, for appellees Perkins.

W. E. PATTERSON, Superior Court Judge.

This is an appeal from three personal injury cases which were consolidated for trial in the Superior Court of Pima County, and which were tried before a jury.

The jury returned verdicts against the defendants, Sidney MacNeil and Helen T. MacNeil, his wife, and Joe Field, in favor of James Perkins, a minor, in the sum of $92,628, Roncevert Garrett, a minor, in the sum of $92,628, and in favor of Jack Justice, a minor, in the sum of $5,000.

Motions for new trial and judgment notwithstanding the verdict in each of the cases, were made and argued before the court. All motions were denied.

Sidney MacNeil and Helen T. MacNeil, his wife, are the owners of certain property comprising 320 acres of patented land, situate near Silver Bell, Arizona. On the land is a mine and mining camp, which has not been in operation since 1949. The MacNeils employed defendant Joe Field as a watchman, who lived on the premises, and was an employee of the MacNeils. The evi-

dence showed that the MacNeils had hired Field as a watchman after due inquiry as to his fitness, and his duties were to live on the property and see that nothing was molested or stolen.

In addition to the usual mining equipment such as gallus frame, ore bin, and buildings, there was a small powder magazine in the side of a small hill on the premises, and at the time of the accident, it contained dynamite caps, blasting caps, and electrical detonators, which remained after mining operations ceased in 1949. The explosives were in small cardboard boxes, 100 to a box when full. The magazine was built out of concrete and was covered in front by an iron door approximately 2′ x 2′ in size. The door had a hasp for a padlock. No lock had even been placed on the door before the accident. At times a wooden stick or a peg was placed into the hasp to keep the door closed. At other times, the door was left ajar so that any person could look into the magazine, put his hand in, or open the door wider. On the day of the accident, the door was open. There were no warning signs on the premises.

On the day of the accident, Roncevert Garrett was 13 years of age, James Perkins was 11 years of age, and Jack Justice was 16 years of age. The boys lived in a trailer court some distance from the mining property. On the day of the injuries complained of, Perkins and Garrett left their home at the trailer court at about 9 a. m., and they walked up the mountain to the mine within about one and one-half hours. The purpose of the boys' trip was to talk to Mr. Field, the watchman; to look around and get some rocks, and to go hunting with a .22 rifle. When they arrived at the mine, Mr. Field was there but left soon after their arrival. The boys went hunting, and as they crossed the mining property, they noted that the magazine door, where the dynamite caps were stored, was open. When they returned from hunting they passed by the magazine and decided to take a box of the dynamite caps. The Perkins boy reached in and took the caps out of the magazine and handed them to Garrett.

Garrett and Perkins testified that they knew the magazine was there from previous visits, that Field had taken caps out of the magazine about three or four days before the accident, put some of the caps on a rock and shot at them with a .22 rifle. Field told the boys that he would sell some of the caps to them for a nickel apiece.

After the boys had taken the caps, they left the area and saw Field returning, but they did not stop to talk to him. On the way home they shot one cap with a gun. Before returning home for lunch, they put the caps under a tree. Neither Garrett nor Perkins told their parents anything about the caps. After lunch, the boys gathered in a creek with another boy by the

name of Jack Justice. They took the caps from under the tree, and one of the boys suggested that they shoot them. They shot a few of the caps with a .22 rifle. When the cap was hit, it sounded like a firecracker and raised a little dust. The three boys then put the caps in a cone from a piece of paper, and lit it, but the caps did not explode. Then the caps were placed on a piece of pasteboard, and the boys built up twigs on the board to start a fire. Justice took his cigarette lighter and started to light the twigs and the caps gave a terrific explosion.

The Garrett boy lost his left leg and left arm as a result of the explosion, the Perkins boy was blinded in both eyes, and the Justice boy lost the sight of his left eye. Each boy denied that he had any knowledge as to the great danger of the blasting caps. No one had ever objected to the boys going on the mining property, and the MacNeils had been advised by Field that the boys had been going across the property on their hunting trips. The MacNeils lived at Marana, about twenty miles from the mine and made occasional visits to the property.

Defendants contend that the attractive nuisance doctrine is not applicable to the facts in this case, that the trial court should not have instructed the jury on the doctrine of attractive nuisance, and that the instructions given on attractive nuisance did not properly set out the rule and the elements.

They further contend that the trial court should have only instructed the jury on the question of negligence in storage and the ordinary care required.

Defendants assert that the case of Salt River Valley Water Users' Association v. Compton, 39 Ariz. 491, 8 P.2d 249; on rehearing 40 Ariz. 282, 11 P.2d 839, should govern the facts in this case, and that the case of Buckeye Irrigation Company v. Askren, 45 Ariz. 566, 46 P.2d 1058, has been repudiated by subsequent decisions of this court dealing with attractive nuisance.

The history of attractive nuisance and an analysis of important cases adopting the attractive nuisance doctrine were reviewed in the original Compton case, and the denial of the motion for rehearing. This court determined in that case that the defendant did not in any way contribute to the building of the bird's nest on the electric pole, and the plaintiff could not prevail as he climbed the pole to see the bird's nest, therefore, the bird's nest was the attraction which was not an artificial creation of the defendant.

Defendants emphasize that the third rule mentioned in the Compton case [40 Ariz. 282, 11 P.2d 842] on rehearing excludes this case from the attractive nuisance doctrine:

"In the third place, unless the child goes on the property by reason of the temptation of the very instrumentality

which is held to be the attractive nuisance, he cannot recover. (Citing cases)."

In reviewing the cases in jurisdictions which have adopted the attractive nuisance doctrine, it is apparent that the courts have not construed the above rule as have defendants. An examination of the cases cited in the Compton case under the third rule mentioned do not sustain defendants' contention.

In the case of Shaver's Adm'r v. Louisville Gas & Electric Co., 207 Ky. 180, 268 S.W. 1082, 1083 a path was used across defendants' property that went within eight feet of a mine air shaft which had been abandoned. The demurrer interposed by defendant was sustained. The court held:

"There is no allegation in the petition or either of the amendments as to how or why the accident happened, other than those already referred to, which, in substance are that, while using the path, and exercising reasonable care in his own safety, decedent fell into the shaft. This being true, it is manifest that it is wholly immaterial whether or not the air shaft was an attractive nuisance, since that fact, if a fact, had no causal connection whatever with the accident."

In the case of Giannini v. Campodonico, 176 Cal. 548, 169 P. 80, the employee according to plaintiff asked a boy of tender years to work in the stable. The stable door fell on the boy. The court held that the stable could not in any way be considered an attractive nuisance.

In the case of Carr v. Oregon Washington R. R. & Navigation Co., 123 Or. 259, 261 P. 899, 60 A.L.R. 1434, the boy's mother operated the hotel portion of the station house on the railroad company's property. About 350 feet from the station house, on defendant's property was a stack of ties. The boy left the station house to play with another boy, and while playing on the ties, they fell on him, and he was killed. The boy was already on the property before he was attracted to the ties.

None of the above cases hold that the instrumentality called for the application of the attractive nuisance doctrine and consequently are not legitimate authority to support this rule.

In Downs v. Sulphur Springs etc., 80 Ariz. 266, 297 P.2d 339, the decedent came on the premises to play with the permission and knowledge of his father, who was an employee of the defendant, and was thereafter attracted to the automatic circuit breaker to see what was in the glass jars. So far as the Compton case, supra, conflicts with the Downs case in this respect, the former is disapproved.

The case of Marino v. Valenti, 118 Cal. App.2d 830, 259 P.2d 84, 95 clearly states the rule:

"Defendants also suggest that even if the shack was an 'attractive nuisance' there can be no recovery because it was a dynamite cap within the shack, not the shack, which caused the injury. *That is not the law, whether we look upon the caps as an attraction within an attraction or as a concealed highly dangerous condition, a 'trap,' on the premises.* We consider that this is more appropriately viewed as a prima facie case of liability measured by the tests indicated in § 339 of the Restatement of the Law of Torts, which our review of the case law convinces us, expresses the California rule concerning injuries to trespassing children."

(Emphasis supplied.)

 In the absence of prior decisions to the contrary this court has consistently followed the application of the Restatement of the Law of Torts in cases where the Restatement is applicable:

"Section 339. *Artificial Conditions Highly Dangerous to Trespassing Children.*

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.

"Comment on Clause (a):

"a. *Necessity that children's presence be caused by the dangerous condition.* It is not necessary that the defendant should know that the condition which he maintains upon his land is likely to attract the trespasses of children or that the children's trespasses shall be due to the attractiveness of the condition. It is sufficient to satisfy the conditions stated in Clause (a) that the possessor knows or should know that children are likely to *trespass upon a part of the land upon which he maintains a condition which is likely to be dangerous to them because of their childish propensities* to

82

intermeddle or otherwise. Therefore, the possessor is subject to liability to children *who after entering the land* are attracted into dangerous intermeddling by such a condition maintained by him although they were ignorant of its existence *until after they had entered the land,* if he knows or should know that the place is one upon which children are likely to trespass and that the condition is one with which they are likely to meddle." (Emphasis supplied.)

■ Defendants insist that no trespass by the boys was shown, therefore, not being trespassers, plaintiffs cannot recover.

"A 'trespasser' is one who does an unlawful act or a lawful act in an unlawful manner to the injury of the person or property of another." 87 C.J.S. Trespass § 1, p. 955.

■ Whether the Garrett and Perkins boys were trespassers when they first crossed the property to go hunting and returned to the magazine is immaterial, because when one of the boys put his hand in the magazine and took the dynamite caps and handed them to the other boy, they both became trespassers.

Defendants assert that the pleadings remove the attractive nuisance doctrine and make the case one for the application, solely of the negligence in storage rule because plaintiffs allege in their complaint that Gar-

rett and Perkins were invitees. There is no merit to this contention. Buckeye Irrigation Co. v. Askren, supra; Southwest Cotton Co. v. Clements, 25 Ariz. 124, 213 P. 1005.

■ Dynamite caps are one of the items recognized as attractive to children under the attractive nuisance doctrine. No other conclusion can be reached from the evidence than the dynamite caps afforded the temptation, and yielding to that temptation they took the caps. Therefore, we have the element of temptation, the yielding to the temptation, and in addition, there existed the trespass.

■ The facts and elements involving the attractive nuisance doctrine in this particular case which afforded the jury the foundation upon which to base its verdict may be listed as follows:

1. The retention of dynamite and dynamite caps by the MacNeils upon the property in a magazine, the door to which was always open with the exception when it was occasionally closed with a peg placed in the hasp.

2. Dynamite caps are a dangerous instrument which demand the highest degree of care in order to prevent injury to others, and defendants did know or should have known that an unlocked magazine containing dynamite caps with its door open involved an

unreasonable risk of serious injury to children.

3. The box of caps being exposed and made accessible by leaving the magazine door open constituted the temptation.

4. The simple precaution of placing a lock on the magazine door or the taking of some other proper precautions to avoid injury to young children was a legal duty imposed upon defendants.

5. Trespassing by the boys in taking the caps.

6. Knowledge by defendants that these boys and other children frequented the premises in the vicinity where the explosives were kept.

7. Lack of realization by all three plaintiffs as to the extreme danger in handling the dynamite caps.

The trial court did not err by instructing the jury on the law of attractive nuisance, as the evidence required such instructions. We find nothing in our decisions subsequent to the Buckeye Irrigation case that either reverses or overrules it. Lee v. Salt River Valley Water Ass'n, 73 Ariz. 122, 238 P.2d 945; Downs v. Sulphur Springs Co-op, supra.

■ Defendants complain that plaintiffs knew right from wrong and had the capacity and did realize the danger involved in handling the dynamite caps. The question of the intelligence of the boys, their ability to appreciate danger and their judgment were questions of fact for the jury to determine, and this matter was submitted to the jury. Marino v. Valenti, supra; Consolidated City & C. P. Ry. Co. v. Carlson, 58 Kan. 62, 48 P. 635–636.

■ Objection is made that the court refused defendants' instruction No. 5 which defines the duty of plaintiffs to use due care and the consequence of failure so to do. The court covered this subject matter thoroughly and more adequately in other instructions and, therefore, there was no error in refusing this one.

■ Defendants contend that even assuming they could legally be charged with negligence, it could not be the proximate cause of the injuries for the reason that the unlawful taking of the caps was an independent intervening wrongful act that broke the chain of causation and relieved the defendants of liability. Whether there is a break in causation by reason of an intervening act which will relieve a defendant from liability for negligence is dependent upon whether the intervening act is one that should have been reasonably anticipated by the defendant. Lyric Amusement Co. v. Jeffries, 58 Ariz. 381, 120 P.2d 417. Applying this principle to cases where children wrongfully acquire possession of explosives, it has been held under circum-

stances similar to those involved herein that the defendant should reasonably anticipate the wrongful act of a child. Olson v. Gill Home Inv. Co., 58 Wash. 151, 108 P. 140, 27 L.R.A.,N.S., 884; Byrd v. Rector, 112 W.Va. 192, 163 S.E. 845, 848, 81 A.L.R. 1213. In the latter case the court said:

"The alleged act of negligence of defendants in leaving explosive caps exposed in the vicinity of a school and highway where they were readily accessible to children was of a nature to produce injury, and the intervention of children carrying away some of the caps and giving them to another child who was injured thereby was not an intervention by an independent agency, within the meaning of the law, so as to relieve the defendants of responsibility, but was in reality only a link in the chain of events naturally to be anticipated."

In the Olson case [58 Wash. 151, 108 P. 142] the court said:

"If such intervening act could, or in the exercise of ordinary prudence should, have been foreseen, the original act still remains the proximate cause of the injury. In this case it was for the jury to determine whether the appellants, who carelessly and illegally stored, and it might be said abandoned, a dangerous explosive, should have anticipated that it might come into the possession of young boys who frequented the place, even though they were trespassers."

This question of reasonable foreseeability was submitted to the jury with appropriate instructions. There was no reversible error in this respect.

 Defendants particularly designate plaintiffs' instructions No. 10 and No. 11 given by the court as error. Instruction No. 10 is as follows:

"In this state we have a principle of law which the courts call the 'attractive nuisance doctrine'. Under this doctrine it is negligence under certain conditions for a person owning or occupying land to store, leave, or place dangerous substances which are attractive to children in a place which is easily accessible to them. Thus, the attractive nuisance doctrine would apply to this case and the defendants would be liable if the following additional facts exist:

"1. The defendants knew that children had frequented the premises where the blasting caps were stored, or that conditions brought to the defendants' attention were such as to cause a person of ordinary prudence to apprehend the likelihood of children coming onto the premises.

"2. The defendants knew or should have known and realized that there

was an unreasonable risk of death or serious bodily injury to children who might take the caps if left accessible.

"3. The danger involved in the blasting caps was not known to or fully realized by the plaintiff boys by reason of their youth, or was not apparent to them, but was to them concealed. This concealment may have been by the novel nature of the caps, or by their harmless appearance.

"4. There must have been some practicable and reasonably easy way by which the defendants could have safeguarded the blasting caps and have prevented their coming into the hands of the boys.

"5. The utility to the defendants of keeping and storing the caps where and in the manner stored was slight as compared to the risk to the young children involved in the case.

"If with respect to the conduct of the defendants you should find that all the conditions mentioned existed, and if you find that the injuries to the plaintiff boys were proximately caused by such conduct, then you should deliver a verdict in the plaintiffs' favor.

"In this connection I instruct you that if the conditions of the attractive nuisance doctrine are found to exist, then the plaintiff boys can recover even though (1) you believe that they were trespassers on defendants' property, or (2) even though they took property of the defendants' without their permission.

"The attractive nuisance doctrine requires a person keeping highly dangerous substances to know and realize that young boys are likely to investigate and try out things, and that they are by their nature full of curiosity, and that they are likely to meddle with everything regardless of whose it is, or where it is, or what it is, and more especially if it is bright in color, will burn, make loud noises or is unusual in its qualities. Therefore it is not a defense for the defendants in this case to assert that the boys may have been trespassers, or that they took property which did not belong to them. Of course, these are matters which you may consider along with other circumstances in evidence in the case in passing upon the defense of contributory negligence."

Instruction No. 11 reads as follows:

"The degree or amount of care required to be exercised by a child differs materially from that required of an adult person. With respect to children, 'as each case arises, it must depend upon its own facts and circumstances. No hard and fast rule has been, or can be, laid down, based upon age alone. The criterion is intelli-

gence, knowledge and experience * * *. The standard or measure of duty in each case is determinable by the capacity ordinarily possessed and exercised by children of the age and development of the class to which the individual belongs.'

"A child is not expected or required to foresee what harm may happen to him, or to make a correct decision, or to appreciate danger to which he may be exposed. The law requires of him only that he exercise for his own safety, the same degree of care that children of his own age and experience would ordinarily exercise in similar circumstances, realizing that children are naturally curious and are likely to investigate, meddle with or play with anything that will make a loud noise or is unusual in its qualities."

The foregoing instructions properly state the law as applicable to the facts in this case, and all of the instructions must be considered in their entirety.

■■■■ Defendants contend the court erred in not striking all evidence pertaining to activities and statements of Field, on motion by MacNeils and the trial court should have submitted separate verdicts to the jury as to Field and the MacNeils. Defendants MacNeil admit that Field was their agent. His duty was to guard the property and take care that it was protected and not molested by anyone coming on the premises. Where an employee is doing what he is supposed to do, the fact that he does it in a manner other than as expected is immaterial, and the employer remains liable for the employee's acts and conduct. Brooks v. Neer, 46 Ariz. 144, 47 P.2d 452. The negligence which caused the injuries was the failure of Field and MacNeils to keep the magazine door locked or to prevent the dynamite caps from being accessible to children. This duty reposed upon each of the defendants. Therefore, if one is liable, all are liable because none of the defendants fulfilled their legal duty. Separate verdicts were not required.

■■■■ Neither the statements by Field, nor the showing of the caps, was the proximate cause of the injury. This conduct by Field was certainly admissible as against him. The court limited the MacNeils' liability as arising "only on the basis of actions by the defendant Field for the defendants MacNeil done within the course and scope of his employment and unless on all the evidence you find that to be true, your verdict must be for the defendants MacNeil."

■■■■ The general rule is that a master who entrusts the custody and control of a dangerous instrumentality to his servant may not avoid liability for injuries on the ground that the servant in doing the particular act was acting outside the scope of

his employment. 57 C.J.S. Master and Servant § 570(e) (2), p. 314; Euting v. Chicago & N. W. Ry. Co., 116 Wis. 13, 92 N.W. 358, 60 L.R.A. 158. The court did not err in denying MacNeils' motion to strike.

 Defendants complain that the trial court erred in admitting in evidence erroneous conclusions of law regarding rules and regulations of Arizona pertaining to explosives in testimony given by Mr. Munroe, a deputy state mine inspector, who qualified as an expert on explosives. He expressed his opinion as to safe practice in the handling and care of explosives. The testimony was properly admitted. Gila Valley, G. & N. Ry. Co. v. Lyon, 9 Ariz. 218, 80 P. 337; Annotation 146 A.L.R. 5. The testimony regarding rules and regulations was adduced on cross-examination by defendants, hence they cannot complain.

Realizing the grave import to all parties involved in this case, we have carefully reviewed the evidence and instructions given and refused by the trial court and do not find any serious error in the proceedings.

The judgments are affirmed.

WINDES, PHELPS and STRUCKMEYER, JJ., concur.

Note. Chief Justice UDALL and Justice JOHNSON having announced their disqualification, Honorable W. E. PAT-TERSON, Judge of Superior Court, Yavapai County, and Honorable ALEX B. BAKER, Judge of Superior Court, Maricopa County, were called to sit in their stead. (Judge BAKER has since passed away.)